641 A.2d 257

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
DAVID MORTIMER, DEFENDANT–RESPONDENT.

Argued October 12, 1993—Decided May 26, 1994.

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for appellant (*Robert W. Gluck,* Middlesex County Prosecutor, attorney).

*Matthew Astore,* Deputy Public Defender II, argued the cause for respondent (*Zulima V. Farber,* Public Defender, attorney).

*Ronald K. Chen* argued the cause for *amicus curiae* American Civil Liberties Union of New Jersey (*Stephen M. Latimer,* attorney; *Mr. Latimer, Mr. Chen, Annamay T. Sheppard, Charles H. Jones* and *Marsha Wenk,* of counsel and on the brief).

*Debra L. Stone,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Fred DeVesa,* Acting Attorney General, attorney).

*Marc S. Klein* submitted a brief on behalf of *amicus curiae* American Jewish Congress (*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* attorneys; *Mr. Klein* and *Marc D. Stern,* of counsel; *Mr. Klein* and *Rhonda Sobral,* on the brief).

*Philip Rosenbach* and *Walter A. Effross* submitted a brief on behalf of *amicus curiae* Anti–Defamation League (*Rosenbach and Rosenbach* and *McCarter and English,* attorneys).

*Stephen M. Orlofsky* submitted a brief on behalf of *amici curiae* National Asian Pacific American Legal Consortium, American Citizens for Justice, the Asian Law Alliance, Chinese for Affirmative Action, the Chinese American Citizens Alliance, the Committee Against Anti–Asian Violence, the Japanese American Citizens League, the National Asian Pacific American Bar Association, and the Organization of Chinese Americans (*Blank, Rome, Comisky & McCauley,* attorneys; *Mr. Orlofsky* and *Elahna Strom Weinflash,* of counsel).

The opinion of the Court was delivered by

CLIFFORD, J.

Defendant pleaded guilty to fourth-degree harassment, a violation of *N.J.S.A.* 2C:33–4 (section 4). He had been charged with having painted on the house of a family of Pakistani descent the words "Dots U Smell"—a scurrilous, offensive allusion that incorporates a reference to the tika, a mark on the forehead of some Hindus, especially women, indicating caste or status, or worn by both sexes as an ornament. See *New Shorter Oxford English Dictionary* 3309 (1993). Before sentencing, however, defendant moved to dismiss the indictment on the basis of the United States Supreme Court's decision in *R.A.V. v. City of St. Paul*, 505 *U.S.* ——, 112 *S.Ct.* 2538, 120 *L.Ed.*2d 305 (1992), in which the Court declared unconstitutional a St. Paul, Minnesota hate-crime ordinance. Defendant argued that *R.A.V.* renders section 4 unconstitutional because that statute violates his First and Fourteenth Amendment rights. The trial court agreed with defendant's reading of *R.A.V.* and therefore dismissed the charge.

On the State's appeal to the Appellate Division we certified the cause directly. Because we conclude that section 4 withstands constitutional attack we now reverse and remand.

I

On August 23, 1991, defendant, David Mortimer, and two juveniles drove to a house owned by a family of Pakistani descent in East Brunswick. Defendant spray-painted the words "Dots U Smell" on the garage door of the house and also damaged two storm windows. The cost to repair the damage was $337.42.

A grand jury indicted defendant on two counts of harassment in violation of *N.J.S.A.* 2C:33–4d (subsection d). Section 4, the harassment statute, provides:

> Except as provided in subsection d., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received.

d. A person commits a crime of the fourth degree if in committing an offense under this section, he acted, at least in part, with ill will, hatred or bias toward, and with a purpose to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity.

Count One of the indictment involved an incident in which defendant allegedly painted a swastika on a car parked in front of the home of a Jewish family, and Count Two was for the incident involving the family of Pakistani descent. Although the indictment did not specify whether the predicate offenses underlying Counts One and Two were violations of subsections a, b, or c, the language of the indictment tracks subsection a.

Pursuant to a negotiated agreement, defendant pleaded guilty to Count Two and agreed to pay restitution to the owners of the East Brunswick house. In return, the State agreed to recommend that the trial court dismiss Count One and limit any sentence to a term of probation not to exceed five years.

Prior to Mortimer's sentencing, the United States Supreme Court handed down its decision in *R.A.V., supra,* 505 *U.S.* ——, 112 *S.Ct.* 2538, 120 *L.Ed.*2d 305, invalidating a St. Paul hate-crime ordinance. Based on that decision, defendant moved to withdraw his plea and to dismiss the indictment. Defendant argued that because subsection d enhances defendant's penalty for criminal conduct based on his viewpoint toward race, color, religion, sexual orientation, or ethnicity, section 4 violates his First and Fourteenth Amendment rights under the United States Constitution by punishing his thoughts or his motive. The trial court, concluding that the statute does violate defendant's First Amendment rights, dismissed the indictment.

The State appealed to the Appellate Division, and thereafter sought direct certification from this Court. We granted direct certification, 133 *N.J.* 412, 627 *A.*2d 1124 (1993), to address the

important First Amendment challenge to the harassment statute and a challenge under the New Jersey Constitution, as well as the related issues of overbreadth, vagueness, and equal protection.

## II

### –A–

Defendant alleges that subsection d violates his fundamental right to freedom of speech under the First Amendment. He argues that inasmuch as *R.A.V., supra,* 505 *U.S.* ——, 112 *S.Ct.* 2538, 120 *L.Ed.*2d 305, dictates that a statute may not criminalize the mere expression of hate, subsection d is invalid. In *R.A.V.,* the Court invalidated the following St. Paul ordinance:

> Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.
>
> [St. Paul, Minn. *Legis.Code* § 292.02 (1990).]

Not only does *R.A.V.* not require us to invalidate subsection d, the opinion in that case does not even influence significantly our decision regarding that statute. Subsection d is readily distinguishable from the St. Paul ordinance: the latter criminalizes the expression of hate itself, whereas subsection d is a victim-selection or penalty-enhancement provision. The difference between the two types of criminal restrictions is clear:

> The first type of hate crime law increases the penalty for a crime motivated by hatred. These 'penalty enhancement' laws increase the penalty associated with the underlying criminal act, such as assault, trespass, or battery, where a biased motivation is found. The second type of hate crime statute treats hate crime as a separate substantive crime.
>
> [Michael S. Degnan, Comment, *"Adding the First Amendment to the Fire": Cross Burning and Hate Crime Laws,* 26 *Creighton L.Rev.* 1109, 1116 (1993).]

Subsections a, b, and c of section 4 are free-standing, because each defines an offense in its own right. Those subsections provide that a person commits a petty disorderly offense if he or she (a) communicates in a "manner likely to cause annoyance or alarm"; (b) strikes, kicks, or shoves another, or threatens to do so;

or (c) engages in a course of alarming conduct. Subsection d merely increases those crimes from petty disorderly offenses to fourth-degree offenses when a person acts "at least in part, with ill will, hatred or bias toward, and with a purpose to intimidate * * * because of race, color, religion, sexual orientation or ethnicity." Before a subsection d charge will lie, therefore, the actor must first engage in conduct prohibited by subsections a, b, or c. Accordingly, subsection d does not create a separate substantive crime; rather, it acts to enhance the penalty for crimes committed with a bias motivation.

In reaching the foregoing conclusion, we decline to read subsections a and d together to create a single substantive offense akin to that struck down by the Supreme Court in *R.A.V.* We cannot apply subsection d until a defendant has engaged in the conduct that subsection a proscribes. Accordingly, subsection d applied on top of subsection a does not punish the mere expression of hate, as did the St. Paul ordinance in *R.A.V.* The effect of subsection d is only to enhance the penalty for the conduct prohibited by subsection a; punishing conduct more severely because of a bias motivation does not create a new, separate offense.

The Supreme Court upheld a penalty-enhancement statute against constitutional attack in *Wisconsin v. Mitchell*, 508 *U.S.* ——, 113 *S.Ct.* 2194, 124 *L.Ed.*2d 436 (1993), concluding that the statute regulated conduct, not protected expression. At the time of Mitchell's trial the Wisconsin statute provided in pertinent part:

(1) If a person does all of the following, the penalties for the underlying crime are increased as provided in sub. (2):

(a) Commits a crime under chs. 939 to 948.

(b) Intentionally selects the person against whom the crime under par. (a) is committed or selects the property which is damaged or otherwise affected by the crime under par. (a) because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person or the owner or occupant of that property, whether or not the actor's belief or perception was correct.

[*Wis.Stat.* § 939.645 (1990).]

Subsection 2 of the Wisconsin statute enumerated the increased penalties.

In sustaining the statute's validity, the Supreme Court noted that "the ordinance struck down in *R.A.V.* was explicitly directed at expression (*i.e.*, 'speech' or 'messages') [but that] the [Wisconsin] statute * * * is aimed at conduct unprotected by the First Amendment." 508 *U.S.* at ——, 113 *S.Ct.* at 2201, 124 *L.Ed.*2d at 447. The Court "reject[ed] the 'view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" *Id.* at ——, 113 *S.Ct.* at 2199, 124 *L.Ed.*2d at 444 (quoting *United States v. O'Brien*, 391 *U.S.* 367, 376, 88 *S.Ct.* 1673, 1678, 20 *L.Ed.*2d 672, 679 (1968)). The Supreme Court concluded that inasmuch as physical assaults and violence are not expressive conduct, the Wisconsin statute does not regulate expression protected by the First Amendment. *Id.* at ——, 113 *S.Ct.* at 2199, 124 *L.Ed.*2d at 444–45.

Like the United States Supreme Court, a number of state courts have upheld their respective penalty-enhancement statutes against First Amendment attack, finding that their statutes proscribe conduct, not protected expression. See, *e.g.*, *People v. Aishman*, 22 *Cal.App.*4th 1030, 22 *Cal.Rptr.*2d 311 (1993) (upholding statute increasing punishment for felonies committed because of one of several specified reasons); *In re Joshua H.*, 13 *Cal.App.* 4th 1734, 17 *Cal.Rptr.*2d 291 (1993) (upholding statute elevating misdemeanor to felony where act committed because of one of several specified factors); *Stegmaier v. State*, 863 *S.W.*2d 924 (Mo.Ct.App.1993) (upholding statute enhancing status of several crimes to felony if crime committed by reason of motive relating to one of specified factors); *People v. Miccio*, 155 *Misc.*2d 697, 589 *N.Y.S.*2d 762 (Crim.Ct.1992) (upholding statute elevating crime of simple harassment to crime of aggravated harassment when bias motive present); *State v. Ladue*, 631 *A.*2d 236 (Vt.1993) (upholding statute increasing penalty for any crime motivated by one of several specified factors).

Because subsection d is a penalty-enhancement statute and not a substantive criminal provision, subsection d, like the Wisconsin

statute, is directed at the purpose behind and motivation for certain prohibited conduct. It does not punish protected expression. Subsection d increases the level of the crime only when a person acts on his or her beliefs and selects the victim with a purpose to intimidate because of one of the specified circumstances—race, color, religion, sexual orientation, or ethnicity. Under that statute a person may harbor ill will, hatred, or bias toward a specific group or person and may communicate such ill will, hatred, or bias to others without fearing prosecution. What that person may not do, however, is *act* on such sentiments in a harassing manner. Section 4 proscribes only the harassing conduct itself. We conclude therefore that subsection d addresses the reasons behind that unlawful conduct; it does not affect protected expression.

■ Nor is subsection d an impermissible regulation of motive. Defendant argues that "[subsection d] improperly enhances penalties based upon the defendant's motives when those motives represent a viewpoint or belief on certain enumerated subjects." We disagree.

In deciding that the Wisconsin statute is not an impermissible regulation of motive, the Supreme Court observed that "motive plays the same role under the Wisconsin statute as it does under federal and state antidiscrimination laws [and] we have previously upheld [such laws] against constitutional challenge." *Mitchell, supra,* 508 *U.S.* at ——, 113 *S.Ct.* at 2200, 124 *L.Ed.*2d at 446. Those statutes do not prohibit discriminatory beliefs; rather, they prohibit acts of discrimination. Furthermore, motive traditionally has been an important factor for judges to consider at sentencing. *Id.* at ——, 113 *S.Ct.* at 2199, 124 *L.Ed.*2d at 445. Finally, the Court affirmed the notion that "'the more purposeful is the criminal conduct, the more serious is the offense, and therefore the more severely it ought to be punished.'" *Id.* at ——, 113 *S.Ct.* at 2199, 124 *L.Ed.*2d at 445 (quoting *Tison v. Arizona,* 481 *U.S.* 137, 156, 107 *S.Ct.* 1676, 1687, 95 *L.Ed.*2d 127, 143 (1987)).

Following *Mitchell's* lead we conclude that the Legislature did not run afoul of the First Amendment in enacting subsection d to enhance the punishment for a person acting with a motivation of bias. First, the State can punish bias-motivated action; indeed, federal and state antidiscrimination laws do precisely that. Second, the Legislature can surely treat bias-motivated offenses with an enhanced level of severity, because bias crimes, by nature, have distinct harmful effects. As the Supreme Court has noted, "bias-motivated crimes are more likely [than other crimes] to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest." *Id.* at ——, 113 *S.Ct.* at 2201, 124 *L.Ed.*2d at 447. Therefore, a regulation providing harsher penalties for bias-motivated crimes is appropriate as a means of addressing the greater harm those crimes cause.

Thus, we hold that subsection d does not violate the First Amendment. The statute neither regulates protected expression nor impermissibly punishes motive.

–B–

■ Defendant argues also that the New Jersey Constitution provides a basis independent of the First Amendment to strike down subsection d. Specifically, defendant alleges that two provisions apply: *New Jersey Constitution* article I, paragraph 6, and *New Jersey Constitution* article I, paragraph 18. Article I, paragraph 6 states in part, "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press." Article I, paragraph 18 provides, "The people have the right freely to assemble together, to consult for the common good, to make known their opinions to their representatives, and to petition for redress of grievances."

■ We acknowledge that we often look to our own State Constitution "to afford our citizens broader protection of certain personal rights than that afforded by analogous or identical provi-

sions of the federal Constitution." *State v. Novembrino*, 105 *N.J.* 95, 145, 519 *A.*2d 820 (1987). But even the most liberal reading of the New Jersey Constitution does not move us to strike down subsection d. We cannot, under any interpretation of the New Jersey Constitution, transform conduct that lacks expressive qualities into something it is not, *i.e.*, expressive conduct worthy of protection. Regardless of the enhanced measure of protection that we might find in the New Jersey Constitution, an activity first must be expressive before the cited provisions of that Constitution can protect it. Inasmuch as we have held that subsection d touches conduct, not expression, *supra* at 527, 641 *A.*2d at 262, we conclude that neither the First Amendment nor the New Jersey Constitution is offended by that statute.

### III

A court can invalidate a statute that is substantially overbroad on its face. *Houston v. Hill*, 482 *U.S.* 451, 458, 107 *S.Ct.* 2502, 2508, 96 *L.Ed.*2d 398, 410, *appeal dismissed* and *cert. denied*, 483 *U.S.* 1001, 107 *S.Ct.* 3222, 97 *L.Ed.*2d 729 (1987). The test is whether the statute " 'reaches a substantial amount of constitutionally protected conduct.' " *Id.* at 458, 107 *S.Ct.* at 2508, 96 *L.Ed.*2d at 410 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 *U.S.* 489, 494, 102 *S.Ct.* 1186, 1191, 71 *L.Ed.*2d 362, 369 (1982). "Criminal statutes must be scrutinized with particular care," *id.* at 459, 107 *S.Ct.* at 2508, 96 *L.Ed.*2d at 410, because the overbreadth doctrine is "strong medicine." *Broadrick v. Oklahoma*, 413 *U.S.* 601, 613, 93 *S.Ct.* 2908, 2916, 37 *L.Ed.*2d 830, 841 (1973).

In *Mitchell, supra*, the defendant argued that the Wisconsin statute is unconstitutionally overbroad because "the statute impermissibly chills free expression with respect to [the enumerated subjects] by those concerned about the possibility of enhanced sentences if they should in the future commit a criminal offense covered by the statute." 508 *U.S.* at ——, 113 *S.Ct.* at 2201, 124 *L.Ed.*2d at 447. But the Court concluded that "the prospect of a

citizen suppressing his bigoted beliefs for fear that evidence of such beliefs will be introduced against him at trial * * * is simply too speculative a hypothesis to support [an] overbreadth claim." *Id.* at ——, 113 *S.Ct.* at 2201, 124 *L.Ed.*2d at 447–48.

As did Mitchell, defendant argues that the penalty-enhancing statute under which he was charged is substantially overbroad. We do not agree, however, that subsection d reaches a substantial amount of constitutionally-protected conduct. The statute proscribes only harassing conduct unprotected by the Constitution. One's thoughts, no matter how biased, bigoted, hateful, odious, or nasty, are protected, and the statute does not prohibit one from freely communicating those thoughts to others unless such communication involves harassing conduct. Inasmuch as a person can communicate those thoughts, the statute has but a minimal effect, if any, on protected expression.

Moreover, we view as unlikely the prospect of a person refraining from communicating such thoughts because of a concern that a prosecutor might introduce such statements at trial to enhance the penalty for an underlying harassment charge. A harasser motivated by hatred will not experience any chilling effect on the speech that accompanies the harassment. Because we are satisfied that subsection d is not overbroad, we will not invalidate the statute on that basis.

## IV

### –A–

Defendant argues that subsection d offends due process and is facially invalid because the statute is unconstitutionally vague. Although the subsection is indeed vague as drafted, we can sustain it with a limiting construction. We are satisfied that if construed narrowly and applied to a proper predicate offense, subsection d withstands a "vagueness" challenge.

Recently, this Court observed:

> "Clear and comprehensible legislation is a fundamental prerequisite of due process of law, especially where criminal responsibility is involved. Vague laws are unconstitutional even if they fail to touch constitutionally protected conduct, because unclear or incomprehensible legislation places both citizens and law enforcement officials in an untenable position. Vague laws deprive citizens of adequate notice of proscribed conduct, and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement."
>
> [*State v. Afanador*, 134 *N.J.* 162, 170, 631 *A.*2d 946 (1993) (quoting *Town Tobacconist v. Kimmelman*, 94 *N.J.* 85, 118, 462 *A.*2d 573 (1983)).]

Thus, "courts give criminal laws sharper scrutiny and more exacting and critical assessment than they give to civil enactments." *Ibid.* The test for a criminal enactment is whether "persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Ibid.* (quoting *Connally v. General Constr. Co.*, 269 *U.S.* 385, 391, 46 *S.Ct.* 126, 127, 70 *L.Ed.* 322, 328 (1926)). A statute is impermissibly vague if "'there is no conduct that it proscribes with sufficient clarity.'" *Ibid.* (quoting *State v. Cameron*, 100 *N.J.* 586, 593, 498 *A.*2d 1217 (1985)). But "'[t]he degree of vagueness that the Constitution tolerates * * * depend[s] in part on the nature of the enactment.'" *Ibid.* (quoting *Hoffman Estates, supra,* 455 *U.S.* at 498, 102 *S.Ct.* at 1193, 71 *L.Ed.*2d at 371).

 Subsection d enhances a penalty "if in committing an offense under this section, [a person] acted, *at least in part with ill will, hatred or bias toward,* and with a purpose to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity." (Emphasis added.) We note at the outset that "[a]bsent any explicit indications of special meanings, the words used in a statute carry their ordinary and well-understood meanings." *Afanador, supra,* 134 *N.J.* at 171, 631 *A.*2d 946. We conclude that even when appraised by use of the ordinary and well-understood meanings of the highlighted words in subsection d, the subsection is vague.

"At least" means "at the minimum," *Webster's New Collegiate Dictionary* 655 (1976); and "in part" means "in some degree." *Id.* at 835. That language, then, implies that a person must act with some amount of ill will, hatred, or bias, but that the amount is less

than total; exactly what amount the statute requires is not clear. The subsection does not enumerate whether an infinitesimal amount of ill will, hatred, or bias is enough, or whether the actor must act with a substantial amount of one of those sentiments. Thus, those words do not tell us with sufficient clarity what the statute proscribes.

Moreover, the language "ill will, hatred or bias toward" suffers from the same short-coming: it fails to communicate with sufficient clarity what the statute prohibits. "Ill will" means an "unfriendly feeling." *Webster's Third New International Dictionary* 1127 (1971). "Hatred" means "prejudiced hostility or animosity." *Webster's New Collegiate Dictionary, supra,* at 525. "Bias" means "a settled and often prejudiced outlook." *Id.* at 106. Those definitions are hardly helpful to a determination of what the statute proscribes, however, because the definitions themselves are abstract. "Unfriendly feeling" simply does not lend itself to an explanation that is adequate for purposes of a criminal statute. Nor can we describe easily what a "prejudiced outlook" is, nor what "prejudiced hostility" or "animosity" mean. Finally, we are not satisfied that the meaning of those terms is obvious, at least not as a basis for the imposition of criminal liability. *See State v. Lee,* 96 *N.J.* 156, 169, 475 *A.*2d 31 (1984) (dissenting opinion) (warning that "We should not undertake to justify [a term's] use in [a] statute by assuming that 'we all *know* what it means.'").

Thus, although we conclude that the language "at least in part with ill will, hatred or bias toward" is unconstitutionally vague because we cannot determine conclusively what that part of the statute proscribes, we need not invalidate the statute altogether. When a statute is vague, "[t]his Court's power and obligation to narrow imprecise statutory language * * * to render it constitutional is beyond question." *State v. Ramseur,* 106 *N.J.* 123, 200, 524 *A.*2d 188 (1987); *accord Town Tobacconist, supra,* 94 *N.J.* at 104, 462 *A.*2d 573 (noting that "[w]hen a statute's constitutionality is doubtful, a court has the power to engage in 'judicial surgery' and through appropriate construction [to] restore the statute to

health"). That power and that obligation exist because the Court "begins with the assumption that the Legislature intended to act in a constitutional manner." *Right to Choose v. Byrne*, 91 *N.J.* 287, 311, 450 *A.*2d 925 (1982). Thus, the Court has a "clear duty [ ] to construe the statute in a manner that would uphold its constitutionality if it is reasonably susceptible to such a construction." *In re Board of Educ. v. Town of Boonton*, 99 *N.J.* 523, 539, 494 *A.*2d 279 (1985), *cert. denied sub nom. Kramer v. Public Employment Relations Comm'n*, 475 *U.S.* 1072, 106 *S.Ct.* 1388, 89 *L.Ed.*2d 613 (1986).

To avoid the "vagueness" problem and thus to construe the statute constitutionally, we will read the vague language out of subsection d, resulting in the following construction of the statute: "A person commits a crime of the fourth degree if in committing an offense under this section, he acted ... with a purpose to intimidate an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity."

That construction describes the conduct prohibited with sufficient clarity to survive a "vagueness" challenge. *Amicus* American Civil Liberties Union of New Jersey suggests, and we agree, that subsection d, if construed as stated above, enhances the penalty for harassment when the defendant selects a victim because of the victim's group identification or inherent characteristics. "Purpose to intimidate," the required state of mind or *mens rea* under the statute, is functionally equivalent to the "selection because of" criterion found in the Wisconsin statute and other antidiscrimination legislation. *See, e.g., Wis.Stat.* § 939.645(1)(b) (increasing penalty for crime where defendant "[i]ntentionally selects the [victim] * * * because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person"); 42 *U.S.C.A.* § 2000e–2(a)(1) (making unlawful an employer's discrimination against employee "because of such individual's race, color, religion, sex, or national origin"). Under that construction, we can state clearly what subsection d proscribes:

selecting a victim because of one of the listed immutable characteristics.

Thus, we hold that when construed to exclude the words "at least in part with ill will, hatred or bias toward," subsection d survives a constitutional vagueness challenge.

–B–

■■■ An application of subsection d is not permissible, however, if a predicate offense to which it applies is itself vague. At oral argument several of the parties contended that subsection a is vague. That part of section 4 provides: "a person commits a petty disorderly offense if, with purpose to harass another, he: a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm."

The Appellate Division upheld subsection a against a vagueness challenge in *State v. Finance American Corp.,* 182 *N.J.Super.* 33, 440 *A.2d* 28 (1981). In that case, the defendant contended "that the terms 'extremely inconvenient hours,' 'offensively course language' and 'any other manner likely to cause annoyance or alarm' are impermissibly vague." *Id.* at 41, 440 *A.2d* 28. The Appellate Division "concede[d] that if viewed in isolation, each of the phrases might be deemed vague. But each is modified in [subsection a] by the requirement that there be a purpose to harass." *Ibid.* Thus, the court found that subsection a is not unconstitutionally vague.

We agree with the Appellate Division that taken in isolation, the quoted phrases may be vague. For example, we cannot declare with sufficient clarity what "extremely inconvenient hours" means. Alone, that phrase does not lend itself to a precise explanation, primarily because the subsection does not indicate under what standards we are to measure the inconvenience. The phrases "offensively course language" and "any other manner likely to cause annoyance or alarm" as well are vague, in isolation, for the

same reason: subsection a does not establish standards by which we are to appraise "offensively course" and "annoyance or alarm."

■ Yet, again agreeing with the Appellate Division in *Finance American,* we conclude that subsection a is not vague. As this Court has noted, "The meaning ascribed to words used in a statute may be indicated or controlled by the words with which it is associated." *Afanador, supra,* 134 *N.J.* at 172, 631 *A.*2d 946. Thus, the requirement, applying to all of section 4, that a defendant act "with purpose to harass another" serves to clarify the otherwise-vague phrases of subsection a. "With purpose to harass another" imposes a specific-intent requirement on subsection a, thereby clarifying the conduct that subsection a proscribes. Accordingly, a person is indictable under subsection a only if that person makes a communication (or communications) using one of the enumerated methods and that person specifically intends thereby to harass the intended recipient of the communication. Inasmuch as we can describe with sufficient clarity what conduct subsection a proscribes, the statute is not vague.

## V

■ Defendant asserts that section 4 violates the Equal Protection clause of the Fourteenth Amendment because offenders "are treated differently under [subsection d] based on the viewpoints they hold and express." Again, we disagree.

■ The guarantee of equal protection does not preclude a State from making classifications. "It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 *U.S.* ——, ——, 112 *S.Ct.* 2326, 2331, 120 *L.Ed.*2d 1, 12 (1992). "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right * * *, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Id.* at ——, 112 *S.Ct.* at 2331–32, 120 *L.Ed.*2d at 12.

Defendant suggests that because the statute reaches thought and expression protected by the First Amendment, this Court should review subsection d under a heightened scrutiny. As we have endeavored to demonstrate, *supra,* at 525–527, 641 *A.*2d at 261–262, subsection d does not regulate First Amendment expression; rather, the statute proscribes only unprotected conduct. Thus, inasmuch as the statute does not jeopardize the exercise of a fundamental right, we need determine only whether the enhanced punishment in subsection d rationally relates to a legitimate State interest.

This Court has held that the State has a legitimate interest in protecting the health, safety, and welfare of its citizens. See, *e.g., Chamber of Commerce v. State,* 89 *N.J.* 131, 155–56, 159, 445 *A.*2d 353 (1982). In enacting subsection d, the Legislature determined that bias-motivated crimes have a harmful effect on the safety and welfare of the citizens of New Jersey; in fact, the Legislature has determined that such crimes have a greater harmful effect than do ordinary crimes. Furthermore, we will not look behind the Legislature's indisputably reasonable determination that the public needs protection from such crimes. This Court has "frequently noted our deference to the Legislature's wisdom, and [we] do so again." *Chamber of Commerce, supra,* 89 *N.J.* at 156, 445 *A.*2d 353. Thus, we will not belabor the conclusion that the State has a legitimate interest in protecting its citizens against bias-motivated crimes.

We are satisfied as well that subsection d is rationally related to that legitimate State interest. First, the statute criminalizes bias-motivated harassment to prevent the conduct from occurring at all. Second, the statute imposes heavy penalties for such conduct, effecting a deterrent and retributive policy, to discourage its future occurrence. Thus, the Legislature had "a plausible policy reason for the classification, * * * and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger, supra,* 505 *U.S.* at

——, 112 *S.Ct.* at 2332, 120 *L.Ed.*2d at 13. Section 4 does not violate equal protection.

## VI

Despite the fact that we uphold subsection d, thereby permitting an inquiry into a person's motive to commit one of the predicate offenses, we caution that our decision is not an invitation to inquire into an actor's beliefs, expressions, and associations generally. Subsection d should not be perceived as a vehicle for suppression of unpopular ideas.

Although we concede that a defendant's bigoted thoughts, expressions, and associations may be relevant in some cases to prove selection of a victim based on the victim's status, that evidence will not be admissible in all circumstances. Trial courts should analyze most carefully any proffered evidence of a defendant's prior statements and associations to insure that a close connection exists between that expression and the defendant's commission of a predicate offense. Absent a close nexus, the probative value of the evidence is substantially outweighed by the danger of undue prejudice; without that nexus the trial court should not admit the evidence to prove that a defendant acted with the motivation subsection d requires. *See Evid.R.* 403 (stating that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of [ ] undue prejudice"). A strict application of *Evidence Rule* 403, however, will protect against any possible abuse of subsection d.

## VII

The judgment of the trial court is reversed, the indictment is reinstated, and the cause is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN-6.

*Opposed*—None.