**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3247-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER D. THIEME, a/k/a
CHRISTOPHER DANIEL THIEME,
JOHN D. THIEME and JOHN
DANIEL THIEME,

    Defendant-Appellant.

_____

Submitted August 4, 2020 – Decided  September 11, 2020

Before Judges Rothstadt and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 16-01-0114.

Joseph E. Krakora, Public Defender, attorney for appellant (Al Glimis, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Jaimee M. Chasmer, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Christopher D. Thieme appeals from the judgment of conviction entered after his guilty plea to two counts of fourth-degree cyber-harassment, N.J.S.A. 2C:33-4.1(a)(2). The judge sentenced defendant in accordance with the plea agreement to an aggregate term of eighteen months imprisonment to run concurrent to the federal sentence defendant was already serving. On appeal, defendant challenges the constitutionality of the cyber-harassment statute and argues that because it fails to set forth a requisite mental state, his plea should be vacated and the indictment dismissed. He also contends that at sentencing the trial court impermissibly relied upon victim impact statements that were not provided to him in advance. After reviewing the record in light of the contentions advanced on appeal, we affirm.

I.

Between March 1 and May 14, 2015, defendant made numerous social media posts containing "disgusting and vile" information about his ex-girlfriend, C.M.[1] and her new boyfriend, A.Y., with the intent to cause both of them "embarrassment, shame, humiliation, and extraordinary damage to their

_____

[1] We use initials to protect the privacy of the victim. R. 1:38-3(c)(12).

reputations." Defendant posted on a "blogging site" that C.M. was a promiscuous whore, had herpes, underwent abortions, and had severe psychological and anger problems. During the same period, defendant also posted on social media "obscene" and "indecent" blog posts regarding A.Y., falsely labeling him a "sick, faggot pedophile" and claimed he sexually assaulted young boys and his sisters. At the time, C.M. had a final restraining order against defendant.

On January 17, 2016, a Bergen County Grand Jury returned indictment number 16-01-0114, charging defendant with three counts of fourth-degree cyber-harassment, in violation of N.J.S.A. 2C:33-4.1(a)(2) (counts one, three, and five); and two counts of fourth-degree violation of a restraining order, in violation of N.J.S.A. 2C:29-9(b) (counts two and four). On July 16, 2018, defendant pled guilty to two counts of fourth-degree cyber-harassment. The remaining charges were later dismissed.

On August 3, 2018, the judge sentenced defendant, in accordance with the plea agreement, to eighteen months in New Jersey State Prison on counts three and five to run concurrent to each other and to a federal sentence. While sentencing defendant, the judge stated his actions were "one of the worst, most egregious cases of cyber-harassment that [he had] seen." After articulating the

facts and circumstances of the case, the judge refused to find any of defendant's requested mitigating factors.

As to the aggravating factors, the judge found factors three (the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3)), six (the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6)), and nine (the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9)).

On August 7, 2018, defendant filed a pro se motion for reconsideration of his sentence, arguing that the judge placed undue weight on the dismissed charges and improperly relied on victim impact statements that were not provided in the presentence report. On December 7, 2018, the judge heard argument and denied the motion. This appeal followed.

On appeal, defendant's counsel raised three points:

> POINT I
>
> THE "REASONABLE PERSON" STANDARD OF N.J.S.A. 2C:33-4.1A(2) (THE CYBER[-]HARASSMENT STATUTE) DOES NOT SATISFY THE SCIENTER [R]EQUIREMENT OF THE FEDERAL AND STATE CONSTITUTIONS. (U.S. CONST. AMENDS. V and XIV; N.J. CONST. (1947) ART. I, PAR. 10) (NOT RAISED BELOW).

4

POINT II

COMPELLING REASONS EXIST FOR THIS COURT TO VACATE THE PLEA AGREEMENT IN THIS CASE. (NOT RAISED BELOW).

POINT III

RESENTENCING IS REQUIRED BECAUSE THE SENTENCING COURT RELIED ON VICTIM IMPACT EVIDENCE NOT PROVIDED TO DEFENDANT AND DEFENSE COUNSEL. AS DEFENDANT DID NOT RECEIVE THE VICTIM IMPACT EVIDENCE, HE WAS DENIED A MEANINGFUL ALLOCUTION. ALSO, THE SENTENCING JUDGE ERRED BY CONSIDERING DISMISSED CHARGES.

In his supplemental pro se brief, defendant raised the following three issues:

ISSUE NUMBER ONE

NEW JERSEY STATE COURTS ARE BOUND TO HEAR A CHALLENGE TO THE CONSTITUTIONALITY OF A STATE STATUTE— SPECIFICALLY [N.J.S.A.] 2C:33-4.1(a)— NOTWITHSTANDING A PLEA AGREEMENT WAIVER OF APPELLATE RIGHTS BY THE LONG-STANDING FEDERAL PRECEDENTS UNDER THE BLACKLEDGE-MENNA DOCTRINE AND THE UNITED STATES SUPREME COURT'S DECISION IN CLASS V. UNITED STATES AS COMPELLED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION.

A-3247-18T1

ISSUE NUMBER TWO

NEW JERSEY'S CYBER[-]HARASSMENT STATUTE SHOULD BE INVALIDATED BECAUSE ITS OVERBREADTH AND VAGUENESS RENDERS THE STATUTE UNCONSTITUTIONAL IN VIOLATION OF THE RIGHT TO FREE EXPRESSION PROTECTED BY THE FIRST AMENDMENT TO THE FEDERAL CONSTITUTION AND ARTICLE I, PARAGRAPH [SIX] OF THE NEW JERSEY STATE CONSTITUTION OF 1947, AND IN VIOLATION OF THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION AND ARTICLE I, PARAGRAPH [TEN], OF THE NEW JERSEY STATE CONSTITUTION OF 1947.

ISSUE NUMBER THREE

[THE] SENTENCING JUDGE RELIED ON "VICTIM IMPACT STATEMENTS" NOT PROVIDED TO THE DEFENDANT OR DEFENSE COUNSEL IN THE PRESENTENCE REPORT OR PRIOR TO SENTENCING IN VIOLATION OF THE DEFENDANT'S CONFRONTATION RIGHTS.

II.

We first address defendant's assertion that the cyber-harassment statute is unconstitutional because the reasonable person standard of N.J.S.A. 2C:33-4.1(a)(2) fails to satisfy the scienter requirement of the Federal and State constitutions.

6

"Declaring a statute unconstitutional is a serious matter that courts may not lightly undertake." State v. Saunders, 302 N.J. Super. 509, 517 (App. Div. 1997). Accordingly, "[a] presumption of validity attaches to every statute; the burden is on the party challenging the constitutionality of the statute to establish its unconstitutionality." State v. B.A., 458 N.J. Super. 391, 407 (App. Div. 2019) (internal quotation marks omitted) (quoting State v. Lenihan, 219 N.J. 251, 266 (2014)). Therefore, courts must construe a challenged statute "to avoid constitutional defects if the statute is reasonably susceptible of such construction." Ibid. (quoting Lenihan, 219 N.J. at 266).

In the context of criminalized expressive activity, courts must construe a statute "narrowly to avoid any conflict with the constitutional right to free speech." Ibid. (quoting State v. Burkert, 231 N.J. 257, 277 (2017)). "[A]ny act of the Legislature will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt." Lenihan, 219 N.J. at 266.

N.J.S.A. 2C:33-4.1(a)(2), which was enacted in 2014, provides in pertinent part:

> A person commits the crime of cyber-harassment if, while marking a communication in an online capacity via any electronic device or through a social networking site and with the purpose to harass another, the person . . . knowingly sends, posts, comments, requests, suggests, or proposes any lewd, indecent, or

obscene material to or about a person <u>with the intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm to his person</u> . . . .

(Emphasis added.)

Defendant describes the elements of the cyber-harassment statute as: (1) an online communication; (2) made to harass another; (3) which was knowingly sent; (4) with an intent to emotionally harm a reasonable person or place a reasonable person in fear of physical or emotional harm. Because the last element is dependent upon a "reasonable person's" perception of the harm, and not the perpetrator's "criminal state" or "intent," defendant contends the scienter requirement set forth in the statute is void and therefore, convicting him under the statute violates his constitutional right to due process.

Defendant relies on the Supreme Court's decision in <u>Elonis v. United States</u>, 575 U.S. __, 135 S. Ct. 2001 (2015), for the premise that a conviction regarding communication of threats cannot be based solely on a reasonable person's interpretation of a defendant's words. In <u>Elonis</u>, the defendant was charged under 18 U.S.C. §875(c), which prevents the "transmi[ssion] . . . [of] any communication containing any threat . . . to injure the person of another" after he used the social media platform, Facebook, to "threaten" patrons and

8

employees of a park, his estranged wife, police officers, a kindergarten class, and an FBI agent. Id. at 2007-08.

Elonis characterized the alleged threats as a form of artistic expression. Id. at 2007. At the conclusion of trial, the court denied the defendant's requested jury instruction that the government must prove his intention to communicate a threat, and instead, charged that a statement is a threat when "a reasonable person would foresee that the statement . . . [w]as a serious expression of an intention to inflict . . . injury . . . ." Ibid.

The Elonis Court acknowledged that the statute at issue did not establish a mental state for communicating a threat, but noted, that "does not mean that none exists." Id. at 2009. Instead, the Court summarized the underlying principle that "wrongdoing must be conscious to be criminal" and a criminal must be "blameworthy in mind" before being held accountable for a criminal act. Ibid. Consequently, this mental state requirement applies "to each of the statutory elements that criminalize otherwise innocent conduct," which, in Elonis, was whether the defendant was aware his communication contained a threat. Id. at 2011. Whether a "reasonable person" would interpret defendant's communications as a threat is "inconsistent with 'the conventional requirement for criminal conduct—awareness of some wrongdoing.'" Ibid. (quoting Staples

v. United States, 511 U.S. 600, 606-07 (1994)). Instead, the Court held that the defendant must know the threatening nature of his communication in order to be held accountable. Id. at 2012.

Here, defendant argues that since N.J.S.A. 2C:33-4.1(a)(2) uses the same ostensibly erroneous "reasonable person" language as the federal statute in Elonis, his conviction must be vacated. Specifically, defendant challenges the last factor of N.J.S.A. 2C:33-4.1(a)(2), contending that the emotional harm or fear of harm cannot be based on whether a reasonable person would be harmed or placed in fear of harm. However, we find Elonis is readily distinguishable from the facts and circumstances of the present case.

The federal statute at issue in Elonis failed to include any mental state requirement at all. Id. at 2008-09 ("In sum, neither Elonis nor the Government has identified any indication of a particular mental state requirement in the text of Section 875(c)."). Because the statute was "silent on the required mental state," the Court applied the "mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct,'" the requirement that the defendant act knowingly. Id. at 2010 (quoting Carter v. United States, 530 U.S. 255, 269 (2000)).

A-3247-18T1

The Court then emphasized that the newly determined mental state must apply to each of the statute's factors, including that the communication was intended to contain a threat. Id. at 2011. Because the defendant's conviction was "premised solely on how his posts would be understood by a reasonable person," and not on what defendant intended the posts to mean, the Court reversed Elonis's conviction. Id. at 2011-12.

Moreover, the "reasonable person" language in N.J.S.A. 2C:33-4.1(a)(2) does not eliminate the scienter requirement in the same manner as the jury instruction in Elonis. Under 18 U.S.C. §875(c), an individual could be convicted upon making any communication containing any "threat," regardless of the defendant's intent. In contrast, the relevant language contained in the New Jersey statute requires the communication to be sent "with the intent to emotionally harm a reasonable person or place a reasonable person in fear of . . . harm . . . ." N.J.S.A. 2C:33-4.1(a)(2) (emphasis added).

Therefore, irrespective of the "reasonable person's" interpretation of the threat, words, or conduct under N.J.S.A. 2C:33-4.1(a)(2), the mental state requirement that defendant must intend for his communication to be a threat still exists, thereby distinguishing the constitutional issue presented in Elonis from the facts and circumstances of this case. Accordingly, defendant has failed to

establish the language of N.J.S.A. 2C:33-4.1(a)(2) is unconstitutional, and we affirm his conviction.

III.

We also reject defendant's argument that the cyber-harassment statute is vague and overbroad, and that his online communications fall under the category of "protected speech." Regardless of the statute, defendant contends his internet posts were protected by the First Amendment.

The Supreme Court outlined the process for declaring a statute unconstitutional:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.
>
> [Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 494-95 (1982). See also State v. Badr, 415 N.J. Super. 455, 467-68 (App. Div. 2010); Saunders, 302 N.J. Super. at 517.]

Defendant maintains that the cyber-harassment statute is unconstitutionally overbroad because the statute's language punishing "lewd, indecent, or obscene material" is "impermissibly vague" for prohibiting such a wide swath of protected speech. "Overbreadth is a doctrine rooted in substantive due process principles that addresses the statute's reach but not its clarity." Saunders, 302 N.J. Super. at 518.

A statute is overbroad when it "reaches a substantial amount of constitutionally protected conduct." Id. at 519 (quoting State v. Mortimer, 135 N.J. 517, 530 (1994)). "The evil of an overbroad law is that in proscribing constitutionally protected activity, it may reach farther than is permitted or necessary to fulfill the state's interests." Badr, 415 N.J. Super. at 468. In the cyber-harassment context, a statute will not be overbroad if it has "a minimal effect on speech and specifically for[bids] harassing conduct." Saunders, 302 N.J. Super. at 519 (citing Mortimer, 135 N.J. at 531). "[S]o long as [a] harassment statute require[s] a specific intent to harass the victim, it . . . pass[es] constitutional scrutiny as a reasonable restriction on the manner in which speech was expressed regardless of its content." Ibid. (citing State v. Fin. Am. Corp., 182 N.J. Super. 33, 39-40 (App. Div. 1981)). We accordingly reject defendant's contention that the statute is overbroad.

The cyber-harassment statute at issue only criminalizes speech that has been: (1) communicated online; (2) made to harass another; (3) knowingly disseminated "lewd, indecent, or obscene material to or about a person"; (4) intended to emotionally harm, or place in fear of harm, a reasonable person. N.J.S.A. 2C:33-4.1(a)(2). It prohibits a minimal amount and a specific type of speech, which was clearly at issue in the matter under review.

During sentencing, the judge commented on the nature of the harassing communications, explaining:

> [Defendant] . . . pled guilty to counts three and five of [the indictment], both fourth degree counts of cyber[-] harassment. And this essentially involves [defendant], over a period of time spanning some months between March and May of 2015, on various social media sites, directing an onslaught of disgusting and vile harassment of the victims in this case . . . via various social media sites, all, very clear to this [c]ourt, with the sole aim of making these two individuals, the two victims of this case, suffer embarrassment, shame, humiliation, and extraordinary damage to their reputations.
>
> You put something out on the internet and out on social media, even if it's something completely ridiculous, disgusting, inaccurate, untrue, the potential consequences of that can remain. We all know that. And the victims in this case have had to deal with that. And, as I said, it's one of the worst, most egregious cases of cyber[-]harassment that I have seen.

14

Defendant contends that simply speaking or writing bad things about another person as an opinion is not prohibited expression, and for the statute to include otherwise encompasses constitutionally protected speech. However, defendant's constitutional rights never "encompass a right to abuse or annoy another person intentionally," B.A., 458 N.J. Super. at 409 (quoting Saunders, 302 N.J. Super. at 519), and based on the "egregious" content of defendant's communications and his intention to bring harm unto the victims, his words clearly fall within that prohibited category. Because N.J.S.A. 2C:33-4.1(a)(2) legitimately protects individuals from harassment, like the communications present in this matter, we conclude the statute does not reach a substantial amount of constitutionally protected activity so as to make it overbroad.

Defendant further argues that N.J.S.A. 2C:33-4.1(a)(2) is impermissibly vague. He claims the statute does not provide an objective, sufficient definition of its elements to properly notify a person of what is expressive communication and what is prohibited, because the statute does not define what is "lewd, indecent, or obscene material" or what constitutes "emotional harm."

A statute is not unconstitutionally vague if it is defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."

B.A., 458 N.J. Super. at 410. In assessing vagueness, it is important to note that "few words possess the precision of mathematical symbols . . . and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions." Saunders, 302 N.J. Super. at 521 (quoting Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340 (1952)). "Consequently, no more than a reasonable degree of certainty can be demanded" in the language of a statute. Ibid. (quoting Boyce Motor Lines, 342 U.S. at 340). In our view, N.J.S.A. 2C:33-4.1(a)(2) is sufficiently clear on its face to warn individuals of the conduct that is prohibited.

Moreover, defendant has failed to articulate how a person of ordinary intelligence would be unable to comprehend what communications are considered "lewd, indecent, or obscene." See Badr, 415 N.J. Super. at 471 ("It is expected that a person of ordinary intelligence who is affected by the standard will use common sense and be guided by principles applicable to the context."). In fact, in Burkert, our Court used the language of N.J.S.A. 2C:33-4.1 as an example of a statute that specifically "targets certain online 'communication[s],'" when assessing the clarity of the harassment statute set forth in N.J.S.A. 2C:33-4(c). 231 N.J. at 271 (alteration in original) (citing N.J.S.A. 2C:33-4.1).

The Court stated: "The cyber-harassment statute limits the criminalization of speech mostly to those communications that threaten to cause physical or emotional harm or damage. The cyber-harassment statute's precise and exacting standard thus stands in contrast to the more loosely worded language of N.J.S.A. 2C:33-4(c)." Id. at 274. Here, defendant's language was egregious and clearly supports the Burkert dicta that a person of average intelligence would be able to decipher it as "lewd, indecent, or obscene."

In a defendant's vagueness challenge to a stalking statute in Saunders, we explained that the claim "fail[ed] because the statute require[d] a specific intent." Id. at 522. We reasoned that even if the defendant's contention was valid that the statute's use of the words "annoy" or "reasonable fear of . . . injury" were vague, because the statute required defendant intend to annoy or place in fear, the statute "modified any phrases that could possibility be deemed vague." Id. at 522-23. The specific intent requirement of the statute "clearly indicate[d] what type of conduct [wa]s prohibited" even if the wording alone did not. Id. at 523.

Here, we are not convinced that the cyber-harassment statute is too vague to apply to calling C.M. "promiscuous" and A.Y. a "child molester" as defendant

admitted at his plea allocution. Accordingly, we reject defendant's contention that the statute is unconstitutionally vague.

## IV.

We next address defendant's argument, raised for the first time on appeal, that his unconditional guilty plea to two counts of cyber-harassment should be vacated. "Generally, a defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea." State v. Means, 191 N.J. 610, 625 (2007) (quoting State v. Knight, 183 N.J. 449, 470 (2005)). In light of our determination as to the constitutionality of the statute, we find this argument to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

## V.

Lastly, defendant contends the sentencing judge erred because he improperly considered: (1) victim impact statements that were not provided to defendant before sentencing; and (2) the dismissed charges against defendant. He alleges resentencing is warranted.

Before sentencing, a court must "order[] a presentence investigation of the defendant and accord[] due consideration to a written report of such investigation . . . ." N.J.S.A. 2C:44-6(a). The report generally includes the

defendant's history of civil commitment, medical history, and psychological evaluations. N.J.S.A. 2C:44-6(b). It also entitles victims to provide statements for the judge's consideration. The statements may include "the nature and extent of any physical harm or psychological or emotional harm or trauma . . . , the extent of any loss to include loss of earnings or ability to work . . . and the effect of the crime upon the victim's family." N.J.S.A. 2C:44-6(b).

A sentencing court must give "due consideration" to the pre-sentence report. State v. Jaffe, 220 N.J. 114, 121 (2014). Because of its importance, a defendant is entitled to disclosure of a presentence report for "fair opportunity to be heard on any adverse matters relevant to the sentencing." State v. Green, 62 N.J. 547, 564 (1973) (quoting State v. Kunz, 55 N.J. 128, 144 (1969)). The rule was implemented to "eliminate the recurring problem of a defendant being sentenced on the basis of inadequate or inaccurate information" and to give the defendant sufficient opportunity "to meaningfully challenge the possible incompleteness or inaccuracy of the report." Ibid.

Defendant claims that the victim impact reports were not included in the presentence report, but instead, forwarded to the sentencing judge prior to sentencing. The sentencing judge then reviewed those statements and relied on them to sentence defendant, stating they were "compelling" and that "[he] read

them more than once . . . in preparing for [sentencing]." Defendant raised this issue in his motion for resentencing, arguing that he was denied the opportunity to review the impact statements and to correct or dispute any of the information provided. His motion was denied, and he now raises the same issue on appeal.

We cannot discern from the record whether defendant was provided the victim impact statements prior to sentencing. However, at the motion hearing for reconsideration of defendant's sentence, the judge noted:

> I also have a copy of [defendant's] original[] pro se application for reconsideration of sentence, and that was based on the fact that the victim impact statements were not made available to him prior to sentencing, although, I mean, my recollection was that they were. But I understand [defendant] probably wanted some more time to review them before we did the sentencing.

Defendant did not appear at the hearing to clarify what he received, but sent a notarized affidavit to the judge requesting the motion be heard in absentia.

Even assuming defendant was not provided the victim impact statements, we find there was no reversible error. Before sentencing, the judge allowed defendant the opportunity to address the court before alluding to the victim impact statements and provided him another opportunity after speaking to their content. Defendant chose not to respond, and his attorney did not object or request an adjournment to review the victim impact statements. After defendant

raised the issue in a subsequent motion, but failed to argue the issue at the motion hearing, the judge "considered the fact that [defendant] . . . had the benefit of reviewing the . . . statements . . ." and since no additional comment was made, did not address the matter any further.

The pre-sentence report is prepared "[b]efore the imposition of a sentence or the granting of probation." R. 3:21-2(a). It includes any "presentence material having any bearing whatever on the sentence." Ibid. Because the pre-sentence report is given "due consideration" in sentencing, Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 3:21-2 (2020) (citing Jaffe, 220 N.J. at 121-22), it is important that the information is accurate, see State v. Leckis, 79 N.J. Super. 479, 485 (App. Div. 1963) (citing State v. Pohlabel, 61 N.J. Super 242 (App. Div. 1960)). The defendant is "entitled to . . . fair opportunity to be heard on any adverse matters relevant to the sentencing." Green, 62 N.J. at 564 (internal quotation marks omitted) (quoting Kunz, 55 N.J. at 144).

We discern no error by the sentencing judge. Defendant does not assert that the statements contained inadequate or inaccurate information, or any additional information not already considered by the sentencing judge. The record clearly establishes that defendant possessed the statements before the motion to reconsider his sentence was adjudicated. Therefore, defendant had

A-3247-18T1

the ability to challenge their purported incompleteness at that time. Defendant has shown no evidence to the contrary.

Defendant also contends that the sentencing judge erred in considering previous, dismissed charges when sentencing him. Specifically, defendant took issue with the judge's statement that: "[Defendant] has multiple other arrests involving similar conduct, although not resulting in a disposition or a conviction, certainly, certainly give this [c]ourt great concern and certainly evidences that [defendant] is a risk to commit another offense." Defendant claims the judge's consideration of the dismissed charges impacted his view of defendant and requires resentencing.

The judge explained that he considered defendant's previous arrests for their relevance as to "the risk that he would commit another offense" of the same type. He reasoned that "[defendant] has multiple prior arrests for similar-type conduct, although not resulting in a conviction, [which] certainly goes toward the risk that he would commit another offense . . . ." The previous arrests lent support for the judge's finding of aggravating factors three, six, and nine.

"Adult arrests that do not result in convictions may be 'relevant to the character of the sentence . . . imposed.'" State v. Rice, 425 N.J. Super. 375, 382 (App. Div. 2012) (alteration in original). Consideration of certain aggravating

and mitigating factors in the assessment of a defendant may include "the mere fact of a prior conviction, or even in the absence of a criminal conviction." State v. Thomas, 188 N.J. 137, 154 (2006) (permitting "such qualitative assessments by sentencing courts in finding aggravating factors [three], [six], and [nine]"). Because we conclude the sentencing judge properly considered defendant's previous arrests to support his findings on the aggravating factors, we reject defendant's argument and affirm his sentence.

We find defendant's remaining arguments to be without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3 (e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION