198 N.J. Super. 120 (1984)
486 A.2d 882
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PATRICK J. FEDERICO, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1984.
Decided December 28, 1984.
*122 Before Judges McELROY, DREIER and SHEBELL.
Roger A. Lowenstein argued the cause for appellant (Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, attorneys; Caryl Wolfson Leightman, on the brief).
Linda K. Calloway argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Linda K. Calloway, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant was indicted on the following counts: (1) kidnapping (first degree), N.J.S.A. 2C:13-1b(2); (2) criminal coercion (third degree), N.J.S.A. 2C:13-5a(1); (3) aggravated assault (fourth degree), N.J.S.A. 2C:12-1b(4); (4) terroristic threats (third degree), N.J.S.A. 2C:12-3a and b; (5) possession of a prohibited weapon (shotgun) (third degree), N.J.S.A. 2C:39-3b; (6) possession of a weapon (shotgun) for an unlawful purpose (second degree), N.J.S.A. 2C:39-4a; (7) possession of a weapon (knife and/or hatchet) for an unlawful purpose (third degree), N.J.S.A. 2C:39-4d.
*123 Janique Brown, a prostitute, alleged that on February 12, 1983 at approximately 9 p.m. she was on a corner in Newark when she was approached by two men in a van. Defendant was a passenger and Robert Hogan the driver. She told them the charge and the men agreed to pay. She entered the van and after making two stops for cigarettes and liquor, they ended up in Hillside at defendant's house.
Brown entered the house and went into the ground floor living room with Hogan. She claimed defendant walked into the room with a sawed-off shotgun, pointed it at her head and said "he wanted to see some action," whereupon she performed oral sex on Hogan.
Defendant left the room but reappeared with a knife and hatchet. He swung the hatchet and the blade portion flew off and hit the wall. He then took the knife, ran it across Brown's thighs and vagina, and said "I should cut it out."
According to Brown, several times throughout the night defendant picked up the shotgun and threatened her. He also threatened to cut up and eat her daughter, to "blow them all up" with what he claimed was a Claymore bomb, and to cut Brown with a knife and burn her with a kerosene lamp. Unconnected handcuffs were placed on Brown's wrists and defendant allegedly forced her to perform oral sex on him.
Defendant later went into the kitchen, prepared himself some food and went upstairs. She claimed defendant had told her that the door was electrified and she was afraid to leave. Hogan then told Brown that she could circumvent the electrified door by turning the knob in the opposite direction. Hogan later also went upstairs and Brown gathered her clothing, unlocked the several door locks and left. She flagged down a passing police car and told the officer that she had been kidnapped.
Brown's record of criminal convictions was presented to the jury revealing convictions for manslaughter, robbery, and possession *124 of heroin and cocaine. Brown admitted she was a prostitute, a heroin addict and that she used cocaine.
Defendant's defense was a general denial of any criminal activity. He testified that he lived in the upstairs apartment of the two-family house and that Hogan was living in the downstairs apartment at the time of the incident. He related that he accompanied Hogan to Newark so Hogan could pick up a prostitute and when they returned to the house he went upstairs and watched television with his girlfriend for the rest of the evening. At one point, he went downstairs to heat a bowl of chili because the gas in his kitchen was off. While he waited for the chili to heat he observed Hogan and Brown in the downstairs living room engaging in sexual acts. Later he returned downstairs and he saw Hogan and the woman handling a shotgun. He returned downstairs for the third and final time when he heard Hogan yelling. He said he found Hogan in the hall with no pants on, holding his wallet, yelling that Brown had just ripped him off for $100.
At the commencement of trial, the State's motion to dismiss the second count charging criminal coercion was granted with defendant's consent. A jury found defendant guilty of all of the remaining counts. The sentencing judge merged the third, fourth, sixth and seventh counts into the kidnapping count and sentenced defendant to a term of 20 years with eight years of parole ineligibility on the kidnapping count. Defendant received a consecutive term of four years with a one year period of parole ineligibility on the fifth count charging possession of a prohibited weapon.
Defendant appeals alleging:
I  The crime of first degree kidnapping was neither properly charged in the indictment nor in instructions to the jury; the jury was thus deprived of its fact finding functions on four essential elements.
II  Defendant was denied his right to effective assistance of counsel guaranteed by the New Jersey Constitution because of his attorney's conflict of interest.
III  The court erred in admitting into evidence a statement made by defendant in violation of his Fifth Amendment rights.

*125 IV  The court erred in permitting improper hearsay evidence to prove Hogan had another address and was not staying at Federico's house.
V  The trial court erred by refusing to permit defense counsel to fully attack the victim's credibility.
VI  The trial court committed reversible error by admitting impermissible hearsay under the guise of the excited utterance exception.
VII  The cumulative effect of the trial court's error was to deny appellant a fair trial.
Defendant complains that the trial judge informed the jury during the charge that the crime of kidnapping consisted of only two elements:
... [First], that the defendant unlawfully confined another person for a substantial period and second, that he so confined her for the purpose of terrorizing her.
He maintains two elements of first degree kidnapping were completely omitted; to wit, "that the victim had not been released unharmed, and had not been released in a safe place prior to the actor's apprehension." Defense counsel first raised the issue at sentencing, stating:
[T]he presentence report would indicate that the Count one charge, kidnapping, is a first degree. I would submit to the Court that's an error. This is a second degree crime.
I call the Court's attention to N.J.S. 2C:13-1(b)- or (c), rather, which indicates, `If the actor releases the victim unharmed in a safe place prior to apprehension, it is a crime of the second degree.'
After hearing further argument, the court ruled:
... He didn't release; she escaped after he left the room. As I recall her testimony, she didn't get out of there until even Mr. Hogan had left her presence. So I'll deny the application.
The following provisions of N.J.S.A. 2C:13-1c are applicable to Count 1 of the indictment:
Kidnapping is a crime of the first degree and upon conviction therefor a person may ..., be sentenced to an ordinary term of imprisonment between 15 and 30 years. If the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree.
Defendant correctly asserts the trial judge failed to address the question of whether the jury must determine the issue of degree of the kidnapping. There was evidence from which a jury might find that defendant had abandoned any attempt to restrict the liberty of the victim, that she was free to leave, and *126 that he did not tell her, as she alleged, that the doors were electrified. With regard to the victim's leaving the premises, the testimony reveals the following:
Q Please tell us the circumstances surrounding your departure.
A Okay. Sundance [defendant] went upstairs. First he went in the kitchen and he cooked something and he went upstairs and I was laying there with Bob. Okay. I said Bob, please don't let him do nothing to me, and he said when you get ready to go out the door, Bob told me when you get ready to go out the door don't turn the doorknob the normal way you would turn it, turn it the opposite way because it was electrified, and I did that.
Q When did you do that?
A I did that when Bob went up the stairs too.
Q And what did you do when Bob went up the stairs?
A I gathered my clothes in my hand and I went to the door.
The jury might also, in these particular circumstances, have concluded that Brown was "unharmed" by the events of the evening; particularly, in view of her testimony that she suffered no physical injury of any nature. The question of whether she suffered any other harm was for the jury to consider in light of all of the facts. See Annotation, "What Is `Harm' Within Provisions Of Statutes Increasing Penalty For Kidnapping Where Victim Suffers Harm," 11 A.L.R.3d 1053 (1967 & Supp. 1984).
We hold that it was error to keep from the jury the issue of whether the victim was released unharmed and in a safe place prior to apprehension. Defendant was convicted of first degree kidnapping by a jury which was never informed as to the elements distinguishing the degrees of kidnapping. The jurors, not the judge, should have determined whether the victim was released unharmed and in a safe place prior to defendant's apprehension.
Under N.J.S.A. 2C:43-6a(2) crimes of the second degree may be punished by a term of imprisonment of between five and ten years. Thus the maximum period of incarceration for first degree kidnapping can be up to three times the maximum for second degree kidnapping.
*127 The Commentary on the Code refers to the provision of N.J.S.A. 2C:13-1c as an "upgrading" provision, specifically stating:
The Code does have "upgrading" provision: It makes kidnapping a crime of the first degree when the defendant does not voluntarily release the victim alive and in a safe place prior to apprehension. [Final Report of the New Jersey Criminal Law Revision Commission: Vol. II: Commentary § 2C:13-1, p. 186 (1971)] [hereinafter cited as Commentary].
The State argues that the language of N.J.S.A. 2C:13-1c makes kidnapping a presumptive first degree crime. The Statute however does not employ that approach and the Commentary of the Commission does not support that conclusion. The Model Penal Code, § 212.0 at 19-20 (Tent.Draft 11, 1960), quoted in Commentary, supra, at 187 states:
... [W]e propose to maximize the kidnapper's incentive to return the victim alive, by making first degree penalties apply only when the victim is not "released alive in a safe place."
Although this language of the Model Penal Code was modified in the New Jersey Code, it is apparent that the purpose of grading kidnapping in the New Jersey Code was still to provide an incentive for perpetrators to return the victim unharmed and in a safe place.
On the facts of this case defendant was entitled to have the jury consider whether the crime was one of first or second degree. The New Jersey Supreme Court declared in State v. Powell, 84 N.J. 305, 317 (1980) that a manslaughter instruction is appropriate:
"... where there is evidence which if believed by a jury would reduce a crime to a lesser included offense, an instruction defining that offense should be given.... This rule is applicable even if the theory of defense is inconsistent with the possibility that the defendant is guilty of the lesser crime.... A defendant in a criminal case is entitled to have the jury consider any legally recognized defense theory which has some foundation in the evidence, however tenuous.... Very slight evidence on a theory of defense will justify the giving of an instruction. [People v. Dortch, 20 Ill. App.3d 911, 314 N.E.2d 324, 325-26 (1st Dist. 1974) (citations omitted)]" (emphasis ours)
The Court continued:
... [W]here the facts clearly indicate the possibility that the crime was manslaughter based upon either provocation/passion or imperfect self-defense, *128 we see no reason why the trial judge should not also be obliged, even without any request being made, so to charge. [84 N.J. at 318 (emphasis ours)]
Although murder and manslaughter may be regarded as different crimes and not merely different gradings of punishment, we are satisfied there is no basis for distinction, and it is the court's obligation to present to a jury the issue of the grading of kidnapping when warranted by the facts. Cf. State v. Saulnier, 63 N.J. 199, 205-07 (1973).
We further hold that the burden of proof is upon the State to convince the jury beyond a reasonable doubt that the victim was not released unharmed in a safe place prior to defendant's apprehension. This is required regardless of whether or not such findings are viewed as necessary elements of first degree kidnapping and without regard to the possible application of N.J.S.A. 2C:1-13d(1), which provides that when the application of the Code depends upon a finding of fact which is not an element of the offense, the burden of proving the fact is on the prosecution or the defendant depending on whose interest or contention will be furthered if the finding should be made.
The United States Supreme Court in Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) noted that:
... when viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction ... between murder and manslaughter may be of greater importance than the difference between guilt and innocence for many lesser crimes. [Id. at 698, 95 S.Ct. at 1889, 44 L.Ed.2d at 519]
Indeed, the possible 20 year difference in sentencing established in New Jersey between first and second degree kidnapping is greater than the difference between guilt and innocence of all but first degree crimes. The Mullaney Court aptly held mere differences in terminology which sometimes distinguish different offenses as varying degrees of one crime rather than classifying them as separate crimes are not to be deemed of critical importance in considering a defendant's right or else:

*129 ... States could define all assaults as a single offense and then require the defendant to disprove the elements of aggravation.... [Id. at 699 n. 24, 95 S.Ct. at 1890 n. 24, 44 L.Ed.2d at 519 n. 24]
It emphasized that:
... [A] state could undermine many of the interests ... sought to [be] protect[ed] without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment. [Id. at 698, 95 S.Ct. at 1889, 44 L.Ed.2d at 519]
The Court concluded:
... We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case. Accordingly, the judgment below is [a]ffirmed. [Id. at 704, 95 S.Ct. at 1892, 44 L.Ed.2d at 522]
Speiser v. Randall, 357 U.S. 513, 525-26, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460, 1472 (1958) makes clear that:
[w]here one party has at stake an interest of transcending value  as a criminal defendant his liberty  th[e] margin of error is reduced as to him by the process of placing on the [prosecution] the burden ... of persuading the factfinder at the conclusion of the trial....
We remand for a new trial and direct the trial court to present to the jury the issue of whether or not the victim was released unharmed in a safe place prior to defendant's apprehension and to instruct the jury that the burden of proving the absence of such facts is upon the State.
There was controversy concerning the events alleged because of inconsistent testimony of the prostitute-victim, who had agreed to perform the same acts for hire which she claimed she performed only through terror. The sharply disputed facts and the inadequate jury charge convince us that a new trial as to all charges is required in the interest of justice.
Defendant also alleges the indictment is fatally defective in that it does not contain any allegation that the unlawful confinement continued for a "substantial period of time." We do not rule on this issue but preserve to the defendant the right to move before the trial court to strike the indictment on that ground. We note that under State v. Wein, 80 N.J. 491, *130 497-501 (1979) each essential element of an offense must be alleged in the indictment not only to enable the accused to prepare a defense but also so there can be assurance that defendant's right to have the grand jury consider each element has been safeguarded. Thus, upon consideration of such a motion, it may be appropriate for the reviewing court to consider whether the grand jury was properly apprised that not only must there be an unlawful confinement but that it must also be for a substantial period of time. While we called for the grand jury transcripts to supplement the record on appeal, this was after oral argument and counsel were not afforded an opportunity to orally argue the issue. We have not, therefore, considered that additional material.
Defendant alleges the trial judge erred in permitting testimony of his incriminating response to a detective's inquiry as to the whereabouts of his girlfriend. Defendant urges that this question was without benefit of Miranda warnings. It is the State's position that sufficient Miranda warnings had been given over a period of several days, additional warnings were unnecessary and the question was not an interrogation, rather, defendant's response was a voluntary spontaneous remark which should be admissible. See State v. Elysee, 159 N.J. Super. 380, 387 (App.Div. 1978).
Our Supreme Court has held that successive warnings may not be necessary in circumstances where a defendant has been fully advised of his rights and thereafter independently volunteers to give a statement. State v. Magee, 52 N.J. 352, 375 (1968), cert. den. 393 U.S. 1097, 89 S.Ct. 891, 21 L.Ed.2d 789 (1969). Defendant was advised of his constitutional rights on two prior occasions and waived his rights and gave statements to the police. The conclusion that in these circumstances the State carried its burden of proving defendant voluntarily and knowingly waived his rights beyond a reasonable doubt is supported by the record. State v. Magee, 52 N.J. at 376; State v. Johnson, 42 N.J. 146, 162 (1964).
*131 Defendant also complains that the State used improper hearsay evidence to prove Hogan had another address and was not staying at defendant's house. Admission of the complained of evidence was harmless error in view of the other similar proofs before the jury. However this error should not be repeated in the event of a retrial as it denied defendant his right to cross-examine Hogan who allegedly made the assertions of a different address. Our ruling pertains to the testimony of the two witnesses, Florence Baranowski and George Stegmeier. We also hold that considering Hogan's personal circumstances the information contained in the police report as to his address was not sufficiently reliable to justify its admission as a business entry under Evid.R. 63(13).
Defendant alleges the trial court improperly refused to allow cross-examination of Janique Brown concerning other incidents of physical injury which she suffered but never reported to the police. Defendant sought to demonstrate to the jury that she was only complaining against him because of pressure from the police who wanted to get him. The testimony sought to be elicited may be probative of the victim's credibility and of possible police bias against defendant. See State v. Plowden, 126 N.J. Super. 228, 230 (App.Div. 1974), certif. den. 64 N.J. 504 (1974). However, the court may exercise its discretion under Evid.R. 4 and preclude such testimony if its probative value is substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice or of confusing the issue or of misleading the jury. Such determination may impact on defendant's right to a fair trial and the trial judge should hold an Evid.R. 8 hearing to adequately explore the issue before making a ruling if the matter is presented in the event of retrial.
We find no error in the court permitting the police to testify as to the victim's statements made when she encountered *132 them on the street immediately after the alleged incident. Evid.R. 63(4)(b); State v. Graham, 59 N.J. 366, 371 (1971).
We find no need to consider the remaining issues raised. The judgment of conviction is reversed and the matter is remanded to the trial court for further proceedings.