698 A.2d 1265

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CHARLES APPRENDI, JR., DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1997—Decided August 19, 1997.

Stern, J.A.D., filed a concurring opinion.

Wecker, J.S.C., temporarily assigned, filed a dissenting opinion.

Before Judges STERN, HUMPHREYS and WECKER.

*Joseph D. O'Neill* argued the cause for appellant (*Joseph D. O'Neill,* attorney; *Mr. O'Neill* and *Charles I. Coant,* on the brief).

*Lisa Sarnoff Gochman* argued the cause for respondent (*Peter Verniero,* Attorney General of New Jersey, attorney; *Ms. Gochman,* of counsel and on the brief).

HUMPHREYS, J.A.D.

The defendant appeals his extended term sentence which was imposed pursuant to *N.J.S.A.* 2C:44–3(e) (the "Hate Crime Statute"). The defendant asserts that the statute is unconstitutional because: (1) the statute is too vague; (2) the statute violates his constitutional right to due process by using a preponderance of the evidence standard.

We have thoroughly reviewed the record and considered the arguments presented. We conclude that the statute is constitutional and affirm.

I

The defendant fired a rifle on two occasions in 1994 at the home of a neighbor. On the first occasion, a bullet entered the third floor bedroom of one of the neighbor's three children. On the second occasion, defendant fired several times and as a result the neighbor's front door and windows were "bullet-riddled." Fortunately, no one was injured. The defendant is white; the neighbor is an African–American. The police later searched the defen-

dant's home and found an "arsenal of weapons," including an anti-personnel bomb.

The defendant was charged in an indictment with various crimes, including first-degree attempted murder. He pled guilty on July 24, 1995 to counts three and eighteen charging him with the second degree crime of possession of a firearm for an unlawful purpose in violation of *N.J.S.A.* 2C:39–4(a) and to count twenty-two charging him with the third degree crime of unlawful possession of a prohibited weapon, the anti-personnel bomb, in violation of *N.J.S.A.* 2C:39–3(a). The defendant conditioned his plea upon the right to appeal his sentence. *See R.* 3:9–3(f).

The State moved to have the defendant sentenced to an extended term pursuant to *N.J.S.A.* 2C:44–3(e). That statute provides:

> The court shall, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime, ... to an extended term if it finds, by a preponderance of the evidence, the grounds in subsection e....
>
> e. The defendant in committing the crime acted, at least in part, with ill will, hatred or bias toward, and with a purpose to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity.
>
> [*Ibid. but see* L.1995, c. 211, § 3, eff. Aug. 14, 1995 (amending the text of this statute).]

The extended sentence for the defendant's second degree crimes is between ten and twenty years which is the ordinary range for a first degree crime. For his third degree crime, the extended sentence would be five to ten years which is the ordinary range for a second degree crime. *See N.J.S.A.* 2C:43–7(a)(3), (4); *N.J.S.A.* 2C:43–6(a)(2), (3). In effect, hate crimes are sentenced one degree higher.

A police officer testified at the hearing on the State's motion that the defendant had told the police that he shot at the house because he knew that blacks were living there and he wanted to give them "a message that they were in his neighborhood."

The defendant, a pharmacist, testified at the hearing. He said that he shot at the front door because the "glass and the purple door" caught his eye and that at the time of the incident, he was under the influence of alcohol and drugs. He denied that he shot

at the house because he wanted to keep blacks away from the area. He also denied that he was a racist or a member of any racist group. He said that he had black friends and had no bias against African–Americans. He testified that he lied to the police about his reasons for shooting, because the police officer threatened him and the defendant wanted to get the interrogation over with.

A psychologist testifying for the defendant at the hearing said that the defendant suffered from an obsessive-compulsive disorder, a cyclothymic disorder (excessive mood swings), drug dependence, alcohol abuse, the impulse disorder of kleptomania, and premature ejaculation. The psychologist concluded that a person of defendant's personality type would say or do almost anything, including lie, to get out of a police interrogation.

The judge found that the testimony of the police officer was "credible, believable." The judge said that the questioning of the defendant by the police "was not overbearing. It was not onerous or is not in any sense dictatorial." The judge said he was "satisfied that the crime was motivated by racial bias" and that the defendant's explanation for the shooting was bizarre. The judge concluded that the defendant had changed his story in order to avoid punishment for a bias crime. The judge found that "the standard of proof required by the statute [preponderance of the evidence] has been met. The defendant is subject to enhanced penalties."

The defendant was sentenced on count eighteen to an extended term of twelve years with a parole ineligibility of four years, the mandatory minimum parole ineligibility under the Graves Act. *See N.J.S.A.* 2C:43–6(c). He was sentenced on count three to a concurrent term of seven years imprisonment with a three year parole bar and on count twenty-two to a concurrent term of three years imprisonment. He was ordered to pay $1,980 restitution to the victim. On each of the three counts, a $100 Violent Crimes Compensation Board penalty and a $75 Safe Street Act penalty were imposed. The remaining counts were dismissed.

## II

██ The defendant contends that the statute is too vague. *See State v. Afanador*, 134 *N.J.* 162, 170, 631 *A*.2d 946 (1993) (a criminal statute is unconstitutionally vague "if persons of common intelligence must necessarily guess at its meaning and differ as to its application"); *State v. Cameron*, 100 *N.J.* 586, 593, 498 *A*.2d 1217 (1985) (a statute is facially invalid where it is "impermissibly vague in all its application, that is, there is no conduct that it proscribes with sufficient certainty").

The defendant's contention is refuted by the decision of the New Jersey Supreme Court in *State v. Mortimer*, 135 *N.J.* 517, 529, 641 *A*.2d 257, *cert. denied*, 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994). In that case, the Court considered the constitutionality of a section of the Hate Crime Statute, *N.J.S.A.* 2C:33–4(d), which provided that "harassment," a petty disorderly persons offense, would be raised to a fourth degree offense if the defendant "acted, at least in part, with ill will, hatred or bias toward, and with a purpose to intimidate, an individual or group of individuals because of race, color, religion, sexual orientation or ethnicity." The defendant in *Mortimer, supra,* challenged the statute on a number of constitutional grounds including vagueness. The Supreme Court said that if the statute were "construed narrowly and applied to a proper predicate offense, subsection d withstands a 'vagueness' challenge." 135 *N.J.* at 531, 641 *A*.2d 257. The Court cured the vagueness problem by excising the words "at least in part, with ill will, hatred or bias toward." *Id.* at 534, 641 *A*.2d 257.

The section of the Hate Crime Statute at issue in the present case, *N.J.S.A.* 2C:44–3(e), has the same language as that construed in *Mortimer.* As was done in *Mortimer,* we will excise the words "at least in part, with ill will, hatred or bias toward" and thereby overcome the vagueness challenge. We note that the Legislature has already made this change to the text of the statute (the statute was amended by L.1995, c. 211, § 3, eff. Aug. 14, 1995).

## III

The Hate Crime Statute provides for an extended term based upon a finding of bias by a preponderance of the evidence. *N.J.S.A.* 2C:44-3(e). The Due Process clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1073, 25 *L.Ed.*2d 368, 375 (1970); *accord State v. Anderson,* 127 *N.J.* 191, 200-01, 603 *A.*2d 928 (1992). The defendant argues that using the preponderance of evidence standard to mandate an extended term sentence violates the constitutional requirement that the State must prove the elements of a crime by the reasonable doubt standard.

The flaw in the defendant's argument is that the Legislature has not made racial bias an element of the crime. The Hate Crime Statute acts as a sentencing factor. The language in the statute is not included in the definition of any crime in the New Jersey Code of Criminal Justice. Instead, the statute is included in a section of the code entitled "authority of court in sentencing." As to sentencing factors which are not elements of a crime, the State's burden of proof is not subject to the reasonable doubt standard. *See McMillan v. Pennsylvania,* 477 *U.S.* 79, 91, 106 *S.Ct.* 2411, 2419, 91 *L.Ed.*2d 67, 79 (1986).

A State has the power to define the elements of a crime. The State's definition of the elements of the crime is usually "dispositive." *Id.* at 85, 106 *S.Ct.* at 2415, 91 *L.Ed.*2d at 75. The State's power to define the elements of a crime has constitutional limits. *Id.* at 91, 106 *S.Ct.* at 2419, 91 *L.Ed.*2d at 79; *Patterson v. New York,* 432 *U.S.* 197, 210, 97 *S.Ct.* 2319, 2327, 53 *L.Ed.*2d 281, 292 (1977) (there are constitutional limits to the State's power to redefine the elements of a crime so as to eliminate the reasonable doubt standard); *Mullaney v. Wilbur,* 421 *U.S.* 684, 699, 95 *S.Ct.* 1881, 1889-90, 44 *L.Ed.*2d 508, 519-20 (1975) (the State may not require a defendant charged with murder to bear the burden of

proving the elements of manslaughter in order to reduce the crime to manslaughter; the State may not undermine due process by redefining elements that constitute different crimes and characterizing them as factors bearing solely on punishment).

In *McMillan, supra,* the State statute provided for a mandatory minimum sentence of five years imprisonment if the sentencing judge found by a preponderance of the evidence that the defendant "visibly possessed" a firearm during the commission of certain enumerated felonies. The Supreme Court found the statute to be constitutional. The Court said that the constitutionality of a statute redefining a crime would "depend on differences of degree" and that the statute in *McMillan* fell on the "permissible side of the constitutional line." 477 *U.S.* at 91, 106 *S.Ct.* at 2419, 91 *L.Ed.*2d at 79.

The Court pointed out in *McMillan* that the statute did not create a presumption that the person was guilty of a crime and did not restructure existing crimes to evade the requirements of the Due Process clause. *Id.* at 87, 106 *S.Ct.* at 2416–17, 91 *L.Ed.*2d at 77. The Court said: "[t]he statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense." *Id.* at 88, 106 *S.Ct.* at 2417, 91 *L.Ed.*2d at 77. Instead, the State has taken a traditional sentencing factor, possession of a firearm, and "dictated the precise weight to be given that factor." *Id.* at 89–90, 106 *S.Ct.* at 2418, 91 *L.Ed.*2d at 79. The Court also said that the defendants' claim that visible possession is "really" an element of the crime, "would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment...." *Id.* at 88, 106 *S.Ct.* at 2417, 91 *L.Ed.*2d at 77–78.

The New Jersey Hate Crime Statute does not create a presumption of guilt nor does it restructure any crimes. The statute is not "tailored to permit the [racial or other bias] finding to be a tail which wags the dog of the substantive offense." *See id.* at 88, 106 *S.Ct.* at 2417, 91 *L.Ed.*2d at 77; *State v. Federico,* 198 *N.J.Super.* 120, 128–29, 486 *A.*2d 882 (App.Div.1984) (the elements

distinguishing the degrees of the crime of kidnapping must be determined by the jury and not the judge to avoid undermining a defendant's constitutional due process rights), *aff'd,* 103 *N.J.* 169, 510 *A.*2d 1147 (1986) (affirming on statutory construction grounds; the Court expressly did not determine whether the result is "compelled by either the United States or New Jersey Constitutions"); *see also State v. Anderson,* 127 *N.J.* 191, 603 *A.*2d 928 (1992) (provision in the Code of Criminal Justice that materiality in a prosecution for perjury is a matter of law for the judge to determine is a violation of the New Jersey Constitution because materiality is an element of the crime).

Further, in New Jersey "motive traditionally has been an important factor for judges to consider at sentencing." *Mortimer, supra,* 135 *N.J.* at 528, 641 *A.*2d 257. Here, as in *McMillan,* the State has taken a sentencing factor, the motive for the crime, and prescribed the weight to be given it. *See* 477 *U.S.* at 89–90, 106 *S.Ct.* at 2418, 91 *L.Ed.*2d at 79.

Numerous cases have held that sentencing factors do not have to be established beyond a reasonable doubt. *See State v. Biegenwald,* 106 *N.J.* 13, 59, 524 *A.*2d 130 (1987) (ordinarily, the State's contentions at a sentencing proceeding need not be proven beyond a reasonable doubt, even those that are statutorily prescribed); *State v. Smith,* 279 *N.J.Super.* 131, 139, 652 *A.*2d 241 (App.Div. 1995) (the State need not prove beyond a reasonable doubt grading provisions which do not constitute elements of the offense); *see also* Graves Act, *N.J.S.A.* 2C:43–6(c) (upon a judge's finding by a preponderance of the evidence that a defendant used or possessed a gun while committing certain crimes, a sentence of three years without parole must be imposed); *State v. Des Marets,* 92 *N.J.* 62, 455 *A.*2d 1074 (1983) (the Graves Act does not unconstitutionally infringe upon the judicial power to suspend sentences); *cf. Wisconsin v. Mitchell,* 508 *U.S.* 476, 490, 113 *S.Ct.* 2194, 2202, 124 *L.Ed.*2d 436, 448 (1993) (a penalty enhancement statute for race-based selection of a victim was not unconstitutional, overbroad or violative of free speech); *State v. Colella,* 298

*N.J.Super.* 668, 675–76, 690 *A.*2d 156 (App.Div.1997) (upholding an extended sentence imposed under the Hate Crime Statute).

The New Jersey Hate Crime Statute does expose the defendant to "greater and additional punishment" and therefore the defendant's claim has "superficial appeal." *See McMillan, supra,* 477 *U.S.* at 88, 106 *S.Ct.* at 2417, 91 *L.Ed.*2d at 78. However, this one factor standing alone does not place the statute on the "impermissible side of the constitutional line." *See id.* at 91, 106 *S.Ct.* at 2419, 91 *L.Ed.*2d at 79. Court decisions have consistently upheld the constitutionality of statutes containing sentencing factors which impose a greater or additional punishment. In *United States v. Rumney,* 867 *F.*2d 714, 717 (1st Cir.), *cert. denied,* 491 *U.S.* 908, 109 *S.Ct.* 3194, 105 *L.Ed.*2d 702 (1989), the court held that the heightened penalty provided by the Armed Career Criminal Act ("ACCA") 18 *U.S.C.* § 924(e)(1), for persons who possess a firearm "after having been thrice convicted of burglary/robbery is a sentence enhancer [not] a substantive crime." Virtually all of the other federal courts of appeal have reached the same conclusion. *E.g., United States v. McGatha,* 891 *F.*2d 1520, 1524 nn. 27, 29 (11th Cir.) (noting that all the federal circuit courts of appeal except the second and fifth circuit have held that the ACCA does not create a new offense but is merely a sentence enhancement provision), *cert. denied,* 495 *U.S.* 938, 110 *S.Ct.* 2188, 109 *L.Ed.*2d 516 (1990); *but see United States v. Davis,* 801 *F.*2d 754 (5th Cir.1986); *see also United States v. Palacios–Casguete,* 55 *F.*3d 557 (11th Cir.1995) (agreeing with four and disagreeing with one federal circuit courts of appeal by holding that a criminal statute regarding deported aliens remaining unlawfully in the United States is a sentence enhancing statute as opposed to a statute defining a separate crime).

The merits of hate crime statutes have been widely recognized. Most of the states have enacted hate crime statutes which provide for enhanced sentences for bias crimes. *See* Craig P. Gaumer, *Punishment for Prejudice: A Commentary on the Constitutionality and Utility of State Statutory Responses to the Problem of*

*Hate Crimes*, 39 *S.D.L.Rev.* 1, 9 & n. 39 (1994) (noting that as of 1994, twenty-nine states had enacted Hate Crime Statutes which were "essentially" sentence enhancement statutes).

In *Mortimer, supra,* the Supreme Court stated:

[t]he Legislature can surely treat bias-motivated offenses with an enhanced level of severity, because bias crimes, by nature, have distinct harmful effects. As the Supreme Court has noted, "bias-motivated crimes are more likely [than other crimes] to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest." Therefore, a regulation providing harsher penalties for bias-motivated crimes is appropriate as a means of addressing the greater harm those crimes cause.

Thus, we hold that subsection d does not violate the First Amendment. The statute neither regulates protected expression *nor impermissibly punishes motive.*

[135 *N.J.* at 529, 641 *A.*2d 257 (citation omitted) (emphasis added).]

In providing for enhanced sentencing in crimes motivated by racial bias, the Legislature has not trespassed on the fundamental element of criminal intent. The requisite criminal intent for this defendant's crimes has been established by his plea of guilty, namely, (1) having a firearm in his possession "with a purpose" to use it unlawfully against the person or property of another, *N.J.S.A.* 2C:39–4(a); and (2) "knowingly" having in his possession a destructive device. *N.J.S.A.* 2C:39–3. Motive is quite different from intent. ". . . *[M]otive* is the inducement for doing an act; the *intent* is the resolve to commit an act." Stated differently, *motive* relates to the end; *intent* relates to the means. Bryan A. Garner *A Dictionary of Modern Legal Usage* 458 (2d Ed.1995).

In *Morss v. Forbes,* 24 *N.J.* 341, 359, 132 *A.*2d 1 (1957), the Court said that intent should not be "confused" with motive and "proof of motive is never essential to a conviction but may be evidential." In *Snakenberg v. Hartford Casualty Ins. Co.,* 299 *S.C.* 164, 383 *S.E.*2d 2, 7 & n. 7 (Ct.App.1989), the court said: "purpose relates to the result desired by the actor; motive is his subjective reason for desiring the result." *See also* 21 *Am.Jur.*2d *Criminal Law* § 173 (1981) ("In criminal law motive may be defined as that which leads or tempts the mind to indulge in a criminal act, or as the moving power which impels to action for a definite result. Motive is distinguishable from intent, which is the

purpose to use a particular means to effect a certain result. Motive is not an essential element of any crime, unless made so by statute.")

The parties have not cited and our legal research has not uncovered any case in which the motive for the crime when used solely as a sentencing enhancer or factor is transformed into an element of the crime which then must be established beyond a reasonable doubt. The modern trend in the law is in the opposite direction. Sentencing judges are being given more discretion to engage in factfinding regarding the circumstances of the crime. As stated in a law review article:

> Under real-offense sentencing systems, [sentencing] judges are given spacious authority to determine an offender's "real" crimes. . . .

> The United States Constitution, as currently interpreted, imposes virtually no restrictions on the practices of real-offense sentencing. Any constitutional constraints that might be imagined by lawyers or academics would require the making of "new Law," and the present Supreme Court has given no signals of movement in that direction. Indeed, the few major rulings handed down by the Court Have uniformly given the states wide latitude in structuring their laws concerning factfinding at sentencing.

> [Kevin R. Reitz, Sentencing Facts: Travesties of Real–Offense Sentencing, 45 Stan.L.Rev. 523, 542 (1993); see also Elizabeth T. Lear, Is Conviction Irrelevant?, 40 U.C.L.A.L.Rev. 1179 (1993) (criticizing real offense sentencing and McMillan); Susan N. Werman, The Tail that Wagged the Dog: Bifurcated Fact–Finding Under the Federal Sentencing Guidelines and the Limits of Due Process, 66 S.Cal.L.Rev. 289 (1992) (same).]

■ We recognize that in a given case, a draconian statutory sentencing mandate based upon a finding of motive reached only by a preponderance of the evidence could infringe on a defendant's due process rights. However, we are also mindful that an act of the Legislature should not be lightly cast aside. Legislatures "are guardians of the liberty and welfare of the people in quite as great a degree as the courts." *Missouri, Kansas & Texas Railway Co. v. May*, 194 *U.S.* 267, 270, 24 *S.Ct.* 638–39, 48 *L.Ed.* 971, 973 (1904) (Holmes, J.). Further, "every possible presumption favors the validity of an act of the Legislature." *New Jersey Sports & Exposition Auth. v. McCrane*, 61 *N.J.* 1, 8, 292 *A.2d* 545 (1972). We are satisfied that this statute falls on the permissible side of

the constitutional line. *See McMillan, supra,* 477 *U.S.* at 91, 106 *S.Ct.* at 2419, 91 *L.Ed.*2d at 79.

In sum, if a person is convicted of a crime by a plea of guilty or by proof beyond a reasonable doubt, we find no constitutional impediment to a statutory requirement for an extended term upon the sentencing judge being satisfied by a preponderance of the evidence that the crime was committed because of racial hatred.

Affirmed.

STERN, J.A.D., concurring.

In *McMillan v. Pennsylvania,* 477 *U.S.* 79, 106 *S.Ct.* 2411, 91 *L.Ed.*2d 67 (1986), the Supreme Court rejected Fourteenth Amendment due process clause and Sixth Amendment arguments addressed to Pennsylvania's statute requiring a five-year minimum sentence for certain crimes committed with a firearm. The arguments included assertions that the statute was unconstitutional because it permitted proof of elements of an offense by a mere preponderance of the evidence and without the need for jury trial.

The Pennsylvania statute there involved "does not authorize a sentence in excess of that otherwise allowed for th[e] offense"; it "neither provides for an increase in the maximum sentence ... nor authorizes a separate sentence. ..." *Id.* at 82–83, 106 *S.Ct.* at 2414, 91 *L.Ed.*2d at 73–74. Rather, the Pennsylvania statute "merely requires a minimum sentence of five years, which may be more or less than the minimum sentence that might otherwise have been [lawfully] imposed" within the range of sentence for the crime. *Id.* at 83–88, 106 *S.Ct.* at 2415–17, 91 *L.Ed.*2d at 74–75.

The statute which we deal, *N.J.S.A.* 2C:44–3e, requires an extended term. In discussing the burden of proof issue, the *McMillan* Court referred to prior rejections of similar due process arguments addressed to "an enhanced sentence," *id.* at 93, 106 *S.Ct.* at 2419, 91 *L.Ed.*2d at 80, and Judge Humphreys' comprehensive opinion traces the post-*McMillan* treatment of similar issues by the federal Courts of Appeal.

The required culpability or state of mind traditionally is an element of the offense which the State must prove by proof beyond a reasonable doubt. *See, e.g., In re Winship,* 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.*2d 368 (1970); *State v. Medina,* 147 *N.J.* 43, 49–50, 685 *A.*2d 1242 (1996), *cert. denied,* ─── *U.S.* ───, 117 *S.Ct.* 1476, 137 *L.Ed.*2d 688 (1997); *see also N.J.S.A.* 2C:2–2. And where a sentence of over six months may be imposed, there is a traditional right of trial by jury. *See, e.g., Baldwin v. New York,* 399 *U.S.* 66, 90 *S.Ct.* 1886, 26 *L.Ed.*2d 437 (1970); *Duncan v. Louisiana,* 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968); *In re Yengo,* 84 *N.J.* 111, 120–21, 417 *A.*2d 533 (1980), *cert. denied,* 449 *U.S.* 1124, 101 *S.Ct.* 941, 67 *L.Ed.*2d 110 (1981). Yet Judge Humphreys' thorough and exhaustive opinion demonstrates that there is a difference, for sentencing purposes, between culpability or state of mind, on the one hand, and motive on the other.[1] *See also N.J.S.A.* 2C:1–4, 1–5, 1–13a, 1–14h, i.

I concur in Judge Humphreys' opinion in this case because the sentence enhancer is in a general sentencing provision of the Code adopted after the Code's provisions establishing the crime, *see McMillan, supra,* 477 *U.S.* at 86, 90, 106 *S.Ct.* at 2416, 2418, 91 *L.Ed.*2d at 79, and feel bound by our Graves Act cases which mandate ineligibility terms on ordinary and required extended term sentences where a judge finds by a preponderance of the evidence that defendant used or possessed a firearm notwithstanding the fact that the offense for which he or she was convicted did not necessarily involve use or possession of a firearm as an element thereof. *See N.J.S.A.* 2C:43–6c, d; 2C:43–7c; *State v. Stewart,* 96 *N.J.* 596, 605–06, 477 *A.*2d 300 (1984); *see also, e.g., State v. Haliski,* 140 *N.J.* 1, 656 *A.*2d 1246 (1995); *State v. White,* 98 *N.J.* 122, 131, 484 *A.*2d 691 (1984). Defendant does not contend

---

[1] *Wisconsin v. Mitchell,* 508 *U.S.* 476, 480, 113 *S.Ct.* 2194, 2197, 124 *L.Ed.*2d 436, 442 (1993), upheld a statute providing for an enhanced sentence because the crime was "committed ... because of the race, religion [or] color" of the victim. However, the statute directed that the fact-finder return a "special verdict" on the question and only First Amendment issues were involved. *Id.* at 481 n. 1, 113 *S.Ct.* at 2197 n. 1, 124 *L.Ed.*2d at 442 n. 1.

that the objective finding required under the Graves Act or the statute in *McMillan* is constitutionally significant when compared with the relevant fact finding necessary for an enhanced sentence for a bias crime. Nor does defendant point to any State constitutional policy or value which justifies or requires different treatment of the issue under state law.

I emphasize that my vote in this case does not signal a view that legislation which alters traditional values with respect to fact-finding in criminal cases should be treated liberally. I also emphasize that we decide only the precise constitutional issues raised by the defendant in this case.

WECKER, J.S.C., (temporarily assigned) dissenting.

I dissent from the majority's affirmance of defendant's extended term sentence under *N.J.S.A.* 2C:44–3e. Section e of 2C:44–3 was enacted as part of the so-called "bias crime" law. L.1990, c. 87, § 4.[1] Section e was incorporated into the Code of Criminal Justice as a sentencing enhancement provision, not as an element of the offense, and mandates an extended term if requested by the prosecutor and if the sentencing judge finds by a preponderance of the evidence that

[t]he defendant in committing the crime acted[, at least in part, with ill will, hatred or bias toward, and][2] with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.[3]

[*N.J.S.A.* 2C:44–3e.]

---

[1] Section 1 of this legislation added similar language to *N.J.S.A.* 2C:12–1e (assault), and § 2 added similar language to *N.J.S.A.* 2C:33–4d (harassment).

[2] The bracketed portion was deleted, after the offense for which defendant was convicted, by L.1995, c. 211, § 3, in response to *R.A.V. v. City of St. Paul*, 505 *U.S.* 377, 112 *S.Ct.* 2538, 120 *L.Ed.*2d 305 (1992). *See also State v. Mortimer*, 135 *N.J.* 517, 529, 641 *A.2d* 257 (1994), *cert. denied*, 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994).

[3] Gender and handicap were added by L.1995, c. 211, § 3.

I disagree with the majority's conclusion that it is permissible to treat a defendant's purpose in committing a crime as a mere sentencing factor rather than as an element of the crime itself. To do so is to deprive the defendant of two fundamental constitutional rights: the right to trial by jury [4] and the right to be convicted of a crime only upon proof of guilt beyond a reasonable doubt. [5] Those guarantees are at the heart of our constitutional system of government. *See, e.g., State v. Medina,* 147 *N.J.* 43, 49–50, 685 *A.*2d 1242 (1996), *cert. denied,* —— *U.S.* ——, 117 *S.Ct.* 1476, 137 *L.Ed.*2d 688 (1997); *State v. Anderson,* 127 *N.J.* 191, 199–201, 603 *A.*2d 928 (1992). The Legislature has incorporated those guarantees into the Code of Criminal Justice. *N.J.S.A.* 2C:1–13a.

My dissent rests on this syllogism: (a) the Federal and State Constitutions require that the jury decide each element of a crime beyond a reasonable doubt; (b) "purpose to intimidate ... because of race, [or] color" is an element of the crime when that purpose raises the sentence for the crime; therefore (c) the Constitution requires that the jury decide whether the defendant acted with the purpose to intimidate because of the victim's race or color. *Cf. Anderson, supra,* 127 *N.J.* at 206, 603 *A.*2d 928. The State's power to define the elements of a crime cannot extend, as the majority holds, to defining away the actor's culpable purpose as an element of the crime—a crime for which this defendant received a sentence beyond the ordinary term for a second degree offense. *Cf. Mullaney v. Wilbur,* 421 *U.S.* 684, 698–99, 95 *S.Ct.* 1881, 1889–90, 44 *L.Ed.*2d 508, 519–20 (1975).

Applied as a sentencing enhancement provision, this statute falls on the impermissible side of the constitutional line, and violates

---

[4] *U.S. Const.,* amends. VI and XIV; *N.J. Const.,* art. I, ¶¶ 9, 10.

[5] *See, e.g., In re Winship,* 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1073, 25 *L.Ed.*2d 368, 375 (1970) (interpreting *U.S. Const.,* amend. XIV); *State v. Anderson,* 127 *N.J.* 191, 200–01, 603 A.2d 928 (1992) (interpreting *N.J. Const.,* art. I, ¶ 1). *See also State v. Ragland,* 105 *N.J.* 189, 193–94, 519 A.2d 1361 (1986).

both the United States and the New Jersey Constitutions. The substance of section e can be saved only by recognizing the forbidden, biased purpose as an element of the underlying offense and requiring that a jury find proof of that purpose beyond a reasonable doubt. Defendant does not separately raise the right to indictment by a grand jury with respect to each element of the offense charged. *See N.J. Const.*, art. I, ¶ 8. *See also State v. D'Amato*, 218 *N.J.Super.* 595, 607, 528 *A.*2d 928 (App.Div.1987). Nevertheless, that right follows once we recognize the purpose as an element of the more culpable offense. The Indictment returned by the grand jury against this defendant did not allege the prohibited purpose set forth in *N.J.S.A.* 2C:44–3e with respect to Count 18, the firearm charge for which defendant received an extended term.[6] Defendant's guilty plea did not provide a factual basis for the prohibited purpose, and he denied such purpose at the sentencing hearing. While defendant waived his right to jury trial on the underlying charge, he did not waive that right, or the right to proof beyond a reasonable doubt, with respect to the prohibited purpose.

By defining purpose as motive and not intent, the majority concludes that defendant's purpose is not an element of the crime. While motive need not be an element of an otherwise purposeful crime, it can be an element, for example as in the statute mandating a life sentence without parole for the murder of a member of law enforcement. *See N.J.S.A.* 2C:11–3b(2). Because section e elevates the culpability of the crime based on defendant's purpose, that purpose—whether it be described as motive or intent—must be deemed an element of the more serious crime, and not just a sentencing factor.

I agree that *State v. Mortimer*, 135 *N.J.* 517, 529, 641 *A.*2d 257 (1994), *cert. denied*, 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351

---

[6] The indictment included that purpose in Count 20, charging defendant with fourth degree harassment in violation of *N.J.S.A.* 2C:33–4d. Count 20 was dismissed in accordance with defendant's plea agreement.

(1994), resolves defendant's vagueness challenge to *N.J.S.A.* 2C:44–3e. *Mortimer*, however, does not address the constitutional infirmities of section e because the penalty enhancement provision of *N.J.S.A.* 2C:33–4d that was challenged in *Mortimer* [7] did not take the element of purpose from the jury, nor allow a defendant's purpose to be found on less than proof beyond a reasonable doubt.[8] In *Wisconsin v. Mitchell*, 508 *U.S.* 476, 113 *S.Ct.* 2194, 124 *L.Ed.*2d 436 (1993), the Supreme Court held that sentence enhancement for a defendant who selected the victim because of race did not violate defendant's First Amendment right of expression. However, as Judge Stern recognizes in footnote 1 of his concurring opinion, the challenged Wisconsin statute required the jury to determine whether defendant acted on account of the victim's race.

The majority concludes that the alleged purpose to intimidate because of race or color "defines motive, not intent," and therefore can be left to the judge to determine by a mere preponderance of the evidence. The Code itself suggests otherwise. "Purpose" in the criminal code is defined by *N.J.S.A.* 2C:2–2b(1):

A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes that they

---

[7] The Court held *N.J.S.A.* 2C:33–4d constitutional after narrowing the original language to avoid unconstitutional vagueness. That statute, defining harassing conduct as a petty disorderly persons offense, raises the offense to a fourth degree crime if the conduct is committed "with a purpose to intimidate ... because of race, color, religion, gender, handicap, sexual orientation or ethnicity."

[8] Where a similar prohibited purpose to intimidate raises a simple assault from a disorderly persons offense to a fourth degree crime, the assault statute so provides. *N.J.S.A.* 2C:12–1(e). Because there is no extended term applicable to a disorderly persons or a petty disorderly persons conviction, *see N.J.S.A.* 2C:43–7a, the bias crime legislation incorporated the prohibited purpose into the provisions criminalizing harassment and assault. Indeed, since the petty disorderly offense is not indictable, the more serious charge of assault or harassment with the purpose to intimidate because of status triggers the right to grand jury indictment and jury trial.

exist. "With purpose," "designed," "with design" or equivalent terms have the same meaning.

[emphasis added.]

The prohibited purpose described by section e—to intimidate because of race, etc.—fits precisely within the category of a result that is the actor's "conscious object ... to cause...." Furthermore, the victim's status within a protected category—in this case, race or color—is indeed an "attendant circumstance[ ]" that the defendant had to believe existed. There can hardly be a clearer example of acting with purpose than that spelled out by *N.J.S.A.* 2C:44–3e.

Moreover, the Code defines an "element of an offense" to include conduct, or attendant circumstances, or a result of conduct, if it

(a) Is included in the description of the forbidden conduct in the definition of the offense;

[or]

(b) Establishes the required kind of culpability....

[*N.J.S.A.* 2C:1–14h]

An actor's purpose to intimidate because of color or race must be construed as part of the definition of the offense, irrespective of where it appears in the Code. Moreover, 2C:44–3 shows us that acting with the proscribed purpose "establishes the required kind of culpability"—culpability that requires punishment as if for a crime one degree higher.

Except for *N.J.S.A.* 2C:44–3e, wherever the Code defines the seriousness of an offense (and thus the maximum sentence allowed) in terms of the actor's purpose, that purpose is treated as an element of the offense and can be found only by a jury, upon proof beyond a reasonable doubt. The net effect of section e, as recognized by the majority, is to elevate the substantive offense—in this case, unlawful possession of a firearm—from a second to a first degree crime. Where the grading of a Code offense depends upon the defendant's mental state, determining that purpose has always been the jury's province. The most obvious example is the homicide statute. It would be unthinkable to instruct the jury in a

homicide trial to decide only whether the defendant's act caused the victim's death, leaving it to the sentencing judge to decide, based upon a mere preponderance of the evidence, whether the defendant intended death or serious injury likely to lead to death; or whether defendant acted recklessly; and if so, whether with a wanton disregard for human life. It would be equally unthinkable in a trial for lewdness under *N.J.S.A.* 2C:14-4 for a sentencing judge and not a jury to decide whether the defendant acted "for the purpose of arousing or gratifying ... sexual desire ...," thereby raising the offense from a disorderly persons to a fourth degree crime. *See also N.J.S.A.* 2C:13-5 (criminal coercion); *N.J.S.A.* 2C:17-1 (arson).

Section e is distinguishable from every other sentence enhancing provision of the Code in that it extends the term of the sentence based on the defendant's mental state at the time of the offense. Except for the extended term provision at issue here, the Code neither mandates nor allows an extended term based upon the defendant's state of mind. The Code provides extended terms solely based upon objective facts. *See N.J.S.A.* 2C:44-3 a, b, c, d, f and g.

The analogy to mandatory parole ineligibility terms for crimes committed with a firearm (*N.J.S.A.* 2C:44-3d, the Graves Act) is not compelling. Graves Act sentencing is not conditioned upon the defendant's mental state, and mental state has historically and constitutionally been an element of the substantive offense.[9]

Section e is also distinguishable from every other Code provision where the status of the victim determines the degree of the crime, and therefore the maximum length of the sentence. The jury in every such case, and not the judge, is required to find beyond a reasonable doubt that the victim held the protected

---

[9] When mental state is an issue in a civil case that issue is normally sufficient to withstand a motion for summary judgment and require a jury trial. *See* Pressler, *Current N.J. Court Rules,* comment on *R.* 4:46-2, at 1317 (1997). *A fortiori,* mental state must be a jury question in a criminal trial.

status. *See, e.g., N.J.S.A.* 2C:11–3b(2) (murder of a police officer); *N.J.S.A.* 2C:14–2 (sexual assault); *N.J.S.A.* 2C:12–1b (aggravated assault). Wherever a particular fact determines the degree of a Code offense, and therefore the maximum prison sentence, the jury determines that fact upon proof beyond a reasonable doubt. For example, theft can be anything from a second degree crime to a disorderly persons offense, depending upon the value the jury places on the stolen property. *See N.J.S.A.* 2C:20–26.

The issue before us in this case is not whether more severe punishment is appropriate for crimes committed to intimidate the victim because that person is a member of a protected group. The Legislature has said that it is. Nor is the issue whether the State could have proved to a jury beyond a reasonable doubt that this defendant acted with such purpose. Implicit or explicit speculation that a jury would have found the forbidden purpose does not justify leaving that issue to the judge or denying defendant the right to proof beyond a reasonable doubt. Where the State intends to seek a mandatory extended term sentence because the underlying crime is accompanied by the forbidden purpose set forth in *N.J.S.A.* 2C:44–3e, then unless the defendant expressly waives a jury, only a jury can find the defendant guilty and then only upon proof beyond a reasonable doubt.

Defendant's extended term sentence should be vacated and the matter remanded for resentencing to an ordinary second degree term as provided by *N.J.S.A.* 2C:43–6.

I would reverse.